No. 24-1608

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

_____

E.D., *et al.*,

        *Plaintiffs-Appellants,*

*v.*

Noblesville School District, et al.,

        *Defendants-Appellees.*

_____

On Appeal from the United States District Court
for the Southern District of Indiana
Case No. 1:21-cv-03075-SEB-TAB

_____

**BRIEF *AMICUS CURIAE* OF THE FOUNDATION FOR MORAL LAW IN SUPPORT OF APPELLANTS**

_____

John Eidsmoe*
*Counsel of Record*
Talmadge Butts
Foundation for Moral Law
P.O. Box 148
Gallant, AL 35972
(334) 262-1245
eidsmoeja@juno.com
talmadge@morallaw.org

June 10th, A.D. 2024          Counsel for *Amicus Curiae*

# CORPORATE DISCLOSURE STATEMENT

Under Rule 26.1 and Rule 29(a)(4)(A) of the Federal Rules of Appellate Procedure, the *amicus* Foundation for Moral Law, Inc., certifies that it is not a subsidiary or affiliate of a publicly owned corporation.

/s/ *John Eidsmoe*

John Eidsmoe
FOUNDATION FOR MORAL LAW
P.O. Box 148
Gallant, AL 35972
(334) 262-1245
eidsmoeja@juno.com

Counsel for *Amicus Curiae*

June 10th, A.D. 2024

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................... C-1

TABLE OF CONTENTS.................................................................... i

TABLE OF AUTHORITIES ............................................................... ii

INTEREST OF THE *AMICUS* ...........................................................1

ARGUMENT .....................................................................................2

I.    E.D. and the Noblesville Students for Life's speech is protected under Tinker, but would nevertheless be protected under Hazelwood if it even applied ................................................2

    A. *Hazelwood's* language refers to content-based discrimination rather than viewpoint-based discrimination .....................................5

    B. The current status of the *Hazelwood* circuit split.............................8

CONCLUSION...................................................................................9

CERTIFICATE OF COMPLIANCE.......................................... 11

CERTIFICATE REGARDING SERVICE ................................. 12

# TABLE OF AUTHORITIES

**Cases**                                                                                                 **Pages**

*Bannon v. Sch. Dist.*,
    387 F.3d 1208 (11th Cir. 2004) ...................................................... 5-6

*Board of Education of Westside Community Schools v. Mergens*,
    496 U.S. 226 (1990) ........................................................................ 4-5

*C.H. v. Oliva*,
    195 F.3d 167 (3d Cir. 1998) ................................................................ 8

*C.H. v. Oliva*,
    226 F.3d 198 (3d Cir. 2000) ............................................................ 8-9

*Chiras v. Miller*,
    432 F.3d 606 (5th Cir. 2005) ............................................................... 8

*Fleming v. Jefferson Cnty. Sch. Dist. R-1*,
    298 F.3d 918 (10th Cir. 2002) ........................................................ 3, 7

*Hazelwood School District v. Kuhlmeier*,
    484 U.S. 260 (1998) ................................................................. *passim*

*Peck ex rel. Peck v. Baldwinsville Cent. Sch. Dist.*,
    426 F.3d 617 (2d Cir. 2005) ............................................................ 3, 8

*Planned Parenthood of Southern Nevada*,
    941 F.2d 817 (9th Cir. 1991) ............................................................... 8

*Robertson v. Anderson Mill Elem. Sch.*,
    989 F.3d 282 (4th Cir. 2021) ........................................................... 3, 6

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
    515 U.S. 819, 829 (1995) ................................................................ 6-8

*Searcy v. Harris*,
    888 F.2d 1314 (11th Cir. 1989) ....................................................... 4, 6

*Tinker v. Des Moines Independent Community School District*,
    393 U.S. 503 (1969) ........................................................................ 2, 9

*Verbena United Methodist Church v. Chilton County*,
    765 F. Supp. 704 (M.D. Ala. 1991).................................................... 4-5

# INTEREST OF THE *AMICUS*[1]

*Amicus curiae* Foundation for Moral Law, Inc. ("the Foundation") is a non-profit, non-partisan public interest organization dedicated to the defense of constitutional liberties and to the strict interpretation of the Constitution as intended by its Framers. The Foundation has a direct interest in this case because we believe that the freedom of speech as protected by the First Amendment is a cornerstone of our constitutional republic upon which all our rights and liberties depend. Further, we believe that the schoolhouse is an important venue for our youth to exercise their right of free speech as Americans and special vigilance is required to ensure that our youngest citizens' rights are respected.

---

[1] Appellants have consented to the filing of this brief. Amicus requested consent from Appellees but received no response. No party or party's counsel authored this brief in whole or in part, or contributed money that was intended to fund its preparation or submission; and no person other than the *amicus curiae,* its members, or its counsel, contributed money that was intended to fund the preparation or submission of this brief.

# ARGUMENT

**I.     E.D. and the Noblesville Students for Life's speech is protected under *Tinker*, but would nevertheless be protected under *Hazelwood* if it even applied.**

The district court below describes Appellants' argument under *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969) that they had a protected First Amendment right to put up a flyer containing political speech on school walls as a "non-starter." Doc. 189, at 34. However, the court evades *Tinker* on the basis that E.D.'s speech falls under an exception of student speech that others "might reasonably perceive to bear the imprimatur of the school." *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260, 271 (1998). Standing in full agreement with the Appellants' thorough argument that *Tinker*, rather than *Hazelwood*, applies in this case, *amicus* will not repeat those arguments, except to note that *Hazelwood* involved an official school newspaper that bore the imprimatur of the school as the officially sponsored speech of the school, whereas Noblesville Students for Life is a student-led group that does not carry the sponsorship of the school. Appellant's Br. Instead, *amicus* argues that even if *Hazelwood* applied in this case, then the current circuit split in its application should be resolved in favor of viewpoint neutrality and protecting Appellants' speech.

The record below is clear that the Appellees censorship of E.D.'s speech was not viewpoint neutral. Both Dean Luna's statement that he could not approve the poster because the school was "dancing on eggshells" regarding political speech, and Principal McCaffrey's statement that he determined the "appropriateness" of the student group's flyers "based on what the current hot topic is in our culture" are unequivocal viewpoint discrimination. Doc. 152-2 at 35, 103. Again, Appellants' brief provides a thorough argument on this point, so *amicus* will discuss the ongoing circuit split regarding whether school-sponsored speech must be viewpoint neutral under *Hazelwood*.

As the Fourth Circuit Court of Appeals recently noted, "neither the Supreme Court nor this court has decided whether restrictions on school-sponsored student speech must be viewpoint neutral under *Hazelwood*, and other circuits are split on this question." *Robertson v. Anderson Mill Elem. Sch.*, 989 F.3d 282, 290 (4th Cir. 2021).[2] While the Fourth Circuit declined to decide that question in *Robertson* because the plaintiff had not plausibly

---

[2] *Citing in comparison*, *e.g.*, *Peck ex rel. Peck v. Baldwinsville Cent. Sch. Dist.*, 426 F.3d 617, 633 (2d Cir. 2005) (declining to abandon the requirement of viewpoint neutrality, "even in the limited context of school-sponsored student speech," absent "clear direction from the Supreme Court"), with *Fleming v. Jefferson Cnty. Sch. Dist. R-1*, 298 F.3d 918, 926 (10th Cir. 2002) ("[W]e conclude that Hazelwood allows educators to make viewpoint-based decisions about school-sponsored speech.").

3

alleged viewpoint discrimination, *Id.*, the case at hand may reach this inquiry if the Court finds that E.D.'s speech was "school sponsored" under *Hazelwood* (though, as aforementioned, it should not). The general argument that *Hazelwood* prohibits viewpoint discrimination is, as explained by the Eleventh Circuit in *Searcy v. Harris*, rooted in core First Amendment analysis and the fact that "although *Hazelwood* provides reasons for allowing a school official to discriminate based on *content*, we do not believe it offers any justification for allowing educators to discriminate based on viewpoint." 888 F.2d 1314, 1315 (11th Cir. 1989) (emphasis original).

Furthermore, even if *Hazelwood* applies and allows content or viewpoint discrimination because the school was concerned that E.D.'s poster could be construed as the school sponsoring or endorsing the pro-life cause, before suppressing E.D.'s speech the school had a duty to use a less restrictive means, such as requiring E.D. to put a disclaimer on her poster to the effect that "This poster and the viewpoints it promotes are in no way endorsed or sponsored by the Noblesville Public Schools." However, this should not be necessary. As this Court recognized in *Board of Education of Westside Community Schools v. Mergens,* 496 U.S. 226, 240 (1990), "To the extent that a religious club is merely one of many different student-initiated voluntary clubs, students should perceive no message of government endorsement of

4

religion." The same would apply to government endorsement of the pro-life position. *See also*, *Verbena United Methodist Church v. Chilton County,* 765 F. Supp. 704 (M.D. Ala. 1991).

On the other hand, the opposing argument that *Hazelwood* does allow for schools to engage in viewpoint discrimination is explained by Judge Black's concurrence in *Bannon v. Sch. Dist.*, 387 F.3d 1208, 1218 (11th Cir. 2004). In *Bannon*, the Eleventh Circuit *per curiam* directly upheld *Searcey's* holding that "*Hazelwood* does not allow a school to censor school-sponsored speech based on viewpoint." *Id.* at 1215. However, in concurrence, Judge Black suggests that *Hazelwood* does allow for viewpoint censorship based on its language, the circuit split at that time, and as a policy matter. *Id.* at 1218. On each point, Judge Black's argument for viewpoint discrimination under *Hazelwood* fails and has only become less persuasive with time.

**A. *Hazelwood's* language refers to content-based discrimination rather than viewpoint-based discrimination.**

First, *Hazelwood's* language suggests:

A school must also retain the authority to refuse to sponsor student speech that *might reasonably be perceived* to advocate drug or alcohol use, irresponsible sex, or conduct otherwise inconsistent with the shared values of a civilized social order, or *to associate the school with any position other than neutrality on matters of political controversy*. Otherwise, the schools would be unduly constrained from fulfilling their role as a principal instrument in awakening the child to cultural values, in preparing

5

> him for later professional training, and in helping him to adjust normally to his environment.

484 U.S. at 272 (emphasis added; citations and internal quotation marks omitted). Judge Black uses this language to distinguish *Searcy* as not dealing with student speech, but rather an outside group's speech. *Bannon*, 387 F.3d at 1218 (Black, J., concurring). However, in doing so, Judge Black makes a critical error by presuming this language describes "the epitome of discrimination based on viewpoint." *Id.*

It does not—in fact, it describes the opposite, *i.e.*, discrimination based on content. As the Fourth Circuit explained in *Robertson*, "viewpoint-based discrimination occurs when a government official 'targets not subject matter, but particular views taken by speakers on a subject.'" 989 F.3d at 290 (*quoting Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)). Each of the items listed in *Hazelwood* above is a subject matter category, not individual and particular viewpoints.

In other words, schools can prohibit all content promoting drug or alcohol use, all content promoting irresponsible sex, all other content that is inconsistent with shared values of civilized order, and all content that associates the school with any position other than neutrality on matters of political controversy. In other words, as the majority in *Bannon* held that *Hazelwood* "permits subject-matter-based restrictions on school-sponsored

student expression [and] does not permit viewpoint-based discrimination." 387 F.3d at 1215. That last content category touches on the present case, but as Appellants' brief thoroughly argues, the Noblesville School District cannot defend its actions under *Hazelwood* because it did engage in viewpoint based discrimination rather than content based discrimination .

The content/viewpoint distinction can be confusing, and various courts have acknowledged the issues this confusion presents. *See e.g.*, *Rosenberger v. Rector & Visitors of the Univ. of Va.* 515 U.S. 819 (1995) ("it must be acknowledged [that] the distinction [between content and viewpoint discrimination] is not a precise one."). The Tenth Circuit case that Judge Black cites makes the same error by asserting that *Hazelwood* allows viewpoint discrimination because "no doubt the school could promote student speech advocating against drug use, without being obligated to sponsor speech with the opposing viewpoint." *Fleming v. Jefferson County Sch. Dist. R-1*, 298 F.3d 918, 928 (10th Cir. 2002). However, this logic does not follow *Hazelwood's* language. Speech that advocates drug and alcohol use is within the category of "conduct otherwise inconsistent with the shared values of a civilized social order," so under *Hazelwood*, schools can prohibit it while being free to allow advocacy against drug use which would be its own content category. 484 U.S. at 272.

### B. The current status of the *Hazelwood* circuit split.

The circuit split now squarely points towards viewpoint neutrality with the Second, Ninth, and Eleventh Circuits holding that viewpoint neutrality is required under *Hazelwood*. *See Peck ex rel. Peck*, 426 F.2d at 632-33 & n.9 (2d. Cir. 2005); *Planned Parenthood of Southern Nevada*, 941 F.2d 817, 829-30 (9th Cir. 1991)(*en banc*); *Searcey*, 888 F.3d at 1319 n.7, 1325 (11th Cir. 1989). The Fourth and Fifth Circuits have acknowledged the split but have not reached the issue. *See Roberts*, 989 F.3d at 290 (4th Cir. 2021); *Chiras v. Miller*, 432 F.3d 606, 615 n.27 (5th Cir. 2005). The Third Circuit did hold that *Hazelwood* did not require viewpoint neutrality in *C.H. v. Oliva*, 195 F.3d 167, 172-73 (3d Cir. 1998), but this decision was later vacated and the issue was not reached by the *en banc* court on review.

Now Justice Alito, joined by Judge Mansmann dissented from the Third Circuit's *en banc* decision in *C.H.* on the basis that the panel's understanding of *Hazelwood* was incorrect. *C.H. v. Oliva*, 226 F.3d 198, 213 (3d Cir. 2000)(*en banc*). Judge Alito's main point was that "things that students express in class or in assignments when called upon to express their own views do not 'bear the imprimatur of the school' and do not represent the school's own speech." *Id.* at 214 (*citing Hazelwood*, 484 U.S. at 271; *Rosenberger*, 515 U.S. at 834). Judge Alito based his reasoning on

"fundamental First Amendment principles" including the principle that "viewpoint discrimination strikes at the heart of the freedom of expression." *Id.* at 213. While his dissent supports Appellants' correct argument that *Hazelwood* doesn't apply in the present case because E.D.'s speech is her own rather than the school's, Judge Alito also points out that if the vacated panel of the Third Circuit's view of *Hazelwood* was correct, the students in *Tinker* could have been prevented from expressing views against Vietnam in the class solely on the basis that some students would resent the expression of antiwar views. *Id.* In other words, the position that *Hazelwood* allows for viewpoint discrimination is totally untenable with Supreme Court First Amendment jurisprudence.

## CONCLUSION

This case is resolvable of the basis of *Tinker* alone and should be. Nevertheless, E.D. and Noblesville Students for Life's free speech has been violated even under *Hazelwood* which does not condone viewpoint discrimination.

This Court should reverse in favor Plaintiff-Appellants.

Respectfully submitted,

John Eidsmoe*
*Counsel of Record*
Talmadge Butts

9

FOUNDATION FOR MORAL LAW
One Dexter Avenue
Montgomery, AL 36104
(334) 262-1245
eidsmoeja@morallaw.org
talmadge@morallaw.org

Counsel for *Amicus Curiae*

June 10th, A.D. 2024

# CERTIFICATE OF COMPLIANCE

1. This document complies with the word limit of Rule 32(a)(7), Fed. R. App. P., because, excluding the parts of the document exempted by Rule 32(f), Fed. R. App. P., this document contains 1,938 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared using Microsoft Word in 14-point Times New Roman.

/s/ *John Eidsmoe*

John Eidsmoe
FOUNDATION FOR MORAL LAW
P.O. Box 148
Gallant, AL 35972
(334) 262-1245
eidsmoeja@juno.com

Counsel for *Amicus Curiae*

June 10th, A.D. 2024

# CERTIFICATE REGARDING SERVICE

I certify that on June 10th, A.D. 2024, a true copy of this document is being filed electronically (via CM/ECF) and will thereby be served on all counsel of record.

/s/ *John Eidsmoe*

John Eidsmoe
FOUNDATION FOR MORAL LAW
P.O. Box 148
Gallant, AL 35972
(334) 262-1245
eidsmoeja@juno.com

Counsel for *Amicus Curiae*