No. 24-1608

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

E.D., a minor by and through her parents and next friends MICHAEL DUELL and Lisa DUELL; NOBLESVILLE STUDENTS FOR LIFE, *Plaintiffs-Appellants*,

v.

NOBLESVILLE SCHOOL DISTRICT, *et al.*, *Defendants-Appellees*.

On Appeal from the United States District Court for the Southern District of Indiana Case No. 1:21-cv-03075-SEB-TAB

BRIEF OF AMICI CURIAE YOUNG AMERICA'S FOUNDATION, STUDENTS FOR LIFE OF AMERICA, AND INDIANA FAMILY INSTITUTE IN SUPPORT OF PLAINTIFFS'-APPELLANTS' OPENING BRIEF

Joshua D. Hershberger
HERSHBERGER LAW OFFICE
P.O. Box 233
Hanover, Indiana 47243
(812) 228-8783
josh@hlo.legal
*Attorney for Amici Curiae*

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-1608

Short Caption: E.D., et al. v. Noblesville School District, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Young America's Foundation, Students for Life of America, Indiana Family Institute

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Hershberger Law Office

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    None

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: Joshua D. Hershberger    Date: June 10, 2024

Attorney's Printed Name: Joshua D. Hershberger

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: P.O. Box 233

Hanover, Indiana 47243

Phone Number: 812-228-8783    Fax Number:

E-Mail Address: josh@hlo.legal

rev. 12/19 AK

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. 3

INTEREST OF AMICI CURIAE ........................................................ 7

INTRODUCTION AND SUMMARY OF ARGUMENT ........................10

ARGUMENT ......................................................................................11

    I.   The District Court's Decision Promotes Censorship rather than Constitutional Rights at School. .......................................................11

       a.   The amici have experienced similar constitutional violations on other high school and college campuses. ..........................................12

       b.   A public high school may not limit a student's speech due to the student's political viewpoint without material and substantial proof of disruption. ....................................................................................16

       c.   Noblesville High discriminated against E.D. because of her political viewpoint. ...........................................................................21

    II.    The District Court's Decision Concerning *Monell* Liability will Encourage other Constitutional Violations. .......................................24

       a.   The amici recognize a growing trend of public school administrators ignoring constitutional rights. ...............................24

       b.   A school principal in Indiana has final decision-making authority over regulations that govern student conduct..................27

       c.   Principal McCaffrey is a final decision-making authority for purposes of *Monell* liability................................................................30

CONCLUSION....................................................................................33

CERTIFICATE OF COMPLIANCE ......................................................35

CERTIFICATE OF SERVICE ..............................................................36

# TABLE OF AUTHORITIES

**Cases**

*Burch v. Barker*,
    861 F.2d 1149 (9th Cir. 1988) ................................................. 20, 23

*Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*,
    473 U.S. 788 (1985) .......................................................... 17

*Good News Club v. Milford Cent. Sch.*,
    533 U.S. 98 (2001) ........................................................... 16

*Harless by Harless v. Darr*,
    937 F. Supp. 1339 (S.D. Ind. 1996) ......................................... 28-29

*Hazelwood Sch. Dist. v. Kuhlmeier*,
    484 U.S. 260 (1988) ......................................................... 19-20

*Kujawski v. Bd. Of Comm'rs*,
    183 F.3d 734 (7th Cir. 1999) ............................................ 24, 27, 31

*Mahanoy Area Sch. Dist. v. B.L. ex rel. Levy*,
    594 U.S. 180 (2021) ..................................................... 10, 18

*Mitchum v. Foster*,
    407 U.S. 225 (1972) .......................................................... 27

*Matal v. Tam*,
    137 S. Ct. 1744 (2017) ....................................................... 17

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978) ................................................. 24, 27, 31, 33

*Nebraska Press Ass'n v. Stuart*,
    427 U.S. 539 (1976) .......................................................... 20

*N.J. by Jacob v. Sonnabend*,

37 F.4th 412 (7th Cir. 2022) ......................................................20

*Nuxoll ex rel. Nuxoll v. Indian Prairie Sch. Dist. # 204,*
523 F.3d 668 (7th Cir. 2008) ............................................18

*Parham v. J.R.,*
442 U.S.584 (1979)..............................................................25

*Pembaur v. City of Cincinnati,*
475 U.S. 469 (1986) .............................................................27

*Perry Ed. Assn. v. Perry Local Educators' Assn.,*
460 U.S. 37 (1983) ..............................................................16

*Rosenberger v. Rector & Visitors of the Univ. of Va.,*
515 U.S. 819 (1995)......................................16-17, 22-23

*Stanley v. Illinois,*
405 U. S. 645 (1972)...........................................................25

*Shuttlesworth v. City of Birmingham, Ala.,*
394 U.S. 147 (1969)......................................................20, 23

*Southworth v. Bd. of Regents,*
307 F.3d 566 (7th Cir. 2002) ......................................23, 33

*Tinker v. Des Moines Independent Community School District,*
393 U.S. 503 (1969)....................................18-19, 22, 33

*Troxel v. Granville,*
530 U.S. 57 (2000)..............................................................25

*Valentino v. Vill. of S. Chicago Heights,*
575 F.3d 664 (7th Cir. 2009) ..............................28-29, 31

*Wisconsin v. Yoder,*
406 U.S. 205 (1972)............................................................25

*Zorach v. Clauson,*
343 U.S. 306 (1952) ..........................................................................26

## Statutes

Ind. Code § 20-18-2-14 ..........................................................................28

Ind. Code § 20-26-5-4 ............................................................................29

Ind. Code § 20-33-2-19 ..........................................................................26

Ind. Code § 20-33-7.5-2 ....................................................................25, 26

Ind. Code § 20-33-8-10 ......................................................................27-31

## Other Authorities

1995 Ind. Legis. Serv. P.L. 131-1995, § 12 (H.E.A. 1279) (West) ...........29

2023 Legislative Scorecard, INDIANA FAMILY INSTITUTE ........................25

2024 Ind. Legis. Serv. P.L. 138-2024 (H.E.A. 1137)(West) ..............26, 29

2024 Legislative Agenda, INDIANA FAMILY INSTITUTE ...........................25

Caroline Wharton, "SFLA Reports Free Speech Violations on School
Campuses have TRIPLED!," STUDENTS FOR LIFE OF AMERICA NEWS
(April 12, 2023) ............................................................................12

Kara Zupkus, "VICTORY: High School YAF Chapter Secures
Recognition After Legal Battle," YOUNG AMERICA'S FOUNDATION
(July 19, 2023)..............................................................................15

Lindsay Cornick, "University of Buffalo sued over revoking recognition
status for Young Americans for Freedom student group," NEW
YORK POST (June 5, 2023) ............................................................14

*The Changing Face of First Amendment Neutrality: R.A.V. v. St. Paul,*
*Rust v. Sullivan and the Problem of Content-Based*
*Underinclusion,* 1992 Sup. Ct. Rev. 29, 43 (1996).........................17

Olivia Torrabla, "Victory! Students for Life of America Group Settles Lawsuit Over Free Speech Censorship," STUDENTS FOR LIFE OF AMERICA NEWS (February 22, 2024)................................................13

"YAF Puts NY High School on Notice for Refusing to Recognize Young Americans for Freedom Chapter," YOUNG AMERICA'S FOUNDATION (June 3, 2020).................................................................................14

## INTEREST OF AMICI CURIAE[1]

Young America's Foundation (YAF) is a 501(c)(3) nonprofit organization with a mission to educate and inspire young Americans from middle school through college with the ideas of individual freedom, a strong national defense, free enterprise, and traditional values. One way YAF fulfills its mission is through student-led Young Americans for Freedom chapters on campuses across the nation. Freedom chapters are consistently berated, penalized, and banned by school administrators and student governments who label their speech as harmful, hateful, or otherwise problematic.

This case is important to YAF because it presents the court an opportunity to curb unconstitutional government overreach and strengthen fundamental freedom of speech, without which the American experiment would not exist. YAF believes that speech does not become conduct merely because the government wishes to regulate it. Further, if the government is permitted to regulate speech, the country will lose out on important debates and ideas; and individual

---

[1]  Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), amici state that no party or counsel for a party other than amici, their members, or their counsel authored this brief in whole or in part or made a monetary contribution intended to fund the preparation or submission of this brief.

autonomy will be stripped away as people are forced to speak in contravention to their own beliefs.

Students for Life of America ("SFLA") is the nation's largest pro-life youth organization that uniquely represents the generation most targeted for abortion. SFLA, a 501(c)(3) charity, exists to recruit, train, and mobilize the Pro-Life Generation to abolish abortion and provide policy, legal, and community support for women and their children, born and preborn. Headquartered in Fredericksburg, VA, SFLA has more than 1,400 student chapters with thousands of members on middle, high school, college, university, medical, and law school campuses in all 50 states and Puerto Rico. The organization was founded in 1977 as a student-run organization, and was launched in 2005 as a full-time operation that now has a nationwide network of staff and volunteers, including more than 127,000 pro-life advocates trained by SFLA. SFLA is gravely concerned that this case will be used as a precedent to censor or even cancel the First Amendment rights of students involved in its chapters.

The Indiana Family Institute ("IFI") opened its doors in 1990 as a nonpartisan public education and research organization recognized by

the Internal Revenue Service as a 501(c)(3) nonprofit group. IFI consists of professional staff; a Board of Directors consisting of state, business, and community leaders; and numerous volunteers. IFI works in association with forty other Family Policy Councils across the nation as well as Focus on the Family and the Family Research Council, but the vast majority of its work and effort centers on public policy, research, and education regarding the health and well-being of all Hoosier families. IFI believes firmly that the family is the key institution of society, and that the overall health of any city, state, region, or nation is largely determined by the health of this bedrock institution. As such, IFI is committed to strengthening and improving the marriages and families of all Hoosiers and seek to partner with other organizations, groups and individuals that share that same great mission.

In recent years, IFI has noticed a growing trend of public school administrators ignoring the constitutional rights of parents and students. Education is foundational to the project of raising children and building a strong family, and neither students nor parents should face discrimination by school officials because of their political or religious views. For these reasons, IFI is concerned that the district

court's decision in this matter will be used as precedent for violating constitutional rights while avoiding liability.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Schools are the nurseries of democracy, but the Defendants' actions in this matter expelled rather than encouraged constitutional rights on the school campus. See *Mahanoy Area Sch. Dist. v. B.L. ex rel. Levy*, 594 U.S. 180, 190 (2021).

The facts of this case are straightforward. E.D. approached the administration of Noblesville High School about launching an SFLA chapter. The Defendants provided conflicting instructions that poorly masked a concern over the content of E.D.'s speech and especially the "Defund Planned Parenthood" image on her proposed flyer. Defendant Luna explained that the school was "...dancing on eggshells," concerning controversies over "political ideology," and Principal McCaffrey took the unprecedented step of revoking the chapter's recognition as a student group because the proposed flyer contained a "political" picture and because the content was not "appropriate" for students. These actions are textbook examples of (1) viewpoint

discrimination and (2) an impermissible prior restraint on constitutionally protected speech.

Instead of holding Noblesville Schools accountable for these infringements, the district court excused the school from liability and even declared that Principal McCaffrey was not a final policymaker for the purpose of *Monell* liability. For all of the above reasons, the amici are deeply concerned that the district court's decision will be used as precedent to censor their right to free speech and association on high school and college campuses.

This Court should reverse and remand with instructions to enter summary judgment for Plaintiffs as to liability, set a trial for damages, and award other appropriate relief. At minimum, this Court should reverse and remand for trial.

## ARGUMENT

## I. The District Court's Decision Promotes Censorship rather than Constitutional Rights at School.

The district court's decision granting Summary Judgment to the Defendants sets a concerning precedent that could be used to chill and even cancel the amici's constitutionally protected speech and association at public high schools and universities.

### a. The amici have experienced similar constitutional violations on other high school and college campuses.

The *amici* are gravely concerned by this case because the facts are all too familiar. SFLA recently reported that free speech violations on school campuses tripled over the 2022-2023 school year, including destruction or theft of displays, censorship by school administrators, and even death threats.[2] By way of example, Felip Avila and the Students for Life chapter at the East Career Technical Academy (ECTA) sued the Clark County School District (CCSD) in Nevada due to disparate treatment of the ECTA Students for Life chapter. *See East Career and Technical Academy Students for Life et al., v. Clark County School District et al.,* case no.: 3:22-cv-00437 (D. Nev. 2023).



---

[2] Caroline Wharton, "SFLA Reports Free Speech Violations on School Campuses have TRIPLED!," *Students for Life of America News* (April 12, 2023), https://studentsforlife.org/2023/04/12/sfla-reports-free-speech-violations-on-school-campuses-have-tripled/.

*Felip Avila, Leader at ECTA Students for Life*
Photo Courtesy of SFLA.

School administrators blocked the ECTA Students for Life chapter from posting flyers in the school hallways and writing announcements for the school newspaper while allowing the same expressive activity by other student organizations. Student for Life flyers, which included the statement, "I reject abortion," were considered "too controversial" by administrators and rejected. *Id.* ECTA and CCSD recently settled with Avila and the Students for Life chapter.[3]

For additional evidence, look no further than Noblesville High and the actions of the Defendants in this case. E.D. was, after all, attempting to start an SFLA student chapter and was met with inconsistent instructions and then an unprecedented derecognition of the nascent pro-life club due to a flyer the administration deemed "inappropriate" and too "political." Doc. 158-3; Doc. 152-2 at 75.

Students in YAF clubs also face regular violations of their rights to freedom of speech and freedom of association. For example, the YAF

---

[3] Olivia Torrabla, "Victory! Students for Life of America Group Settles Lawsuit Over Free Speech Censorship," *Students for Life of America News* (February 22, 2024), https://studentsforlife.org/2024/02/22/victory-students-for-life-of-america-group-settles-lawsuit-over-free-speech-censorship/.

student group at the University of Buffalo recently sued the University due to revocation of its status as a recognized group and revocation of access to student-fee funding. *See University at Buffalo Young Americans for Freedom, et al., v. University at Buffalo Student Association Inc., et al, case no.: 1:23-CV-00480-LJV* (W.D.N.Y. 2023). The University adopted a policy that barred recognition for any group affiliated with a national organization, and the student body president told the student association senate, "We all know why we are doing this."[4] The University of Buffalo eventually reversed its policy and restored YAF's recognition as a student club. However, the University is now requiring student groups to sign away their legal rights as a condition of recognition, and YAF has challenged this new infringement. *Id.*

Next, student Luke Wong at Harrison High School in New York challenged the school's administration after an assistant principal denied recognition for a YAF club for the third time.[5] The

---

[4] Lindsay Cornick, "University of Buffalo sued over revoking recognition status for Young Americans for Freedom student group," *New York Post* (June 5, 2023), https://nypost.com/2023/06/05/university-of-buffalo-sued-over-revoking-recognition-status-for-young-americans-for-freedom-student-group/.
[5] "YAF Puts NY High School on Notice for Refusing to Recognize Young Americans for Freedom Chapter," *Young America's Foundation* (June 3, 2020),

administration provided three different and arbitrary reasons for the denial, including this statement: "We typically do not create clubs for organizations that students are involved with or could be involved with outside of school." *Id.* This statement ignored the fact that Harrison High recognized thirty-three different groups at the time, including Friends of Rachel, the Gay-Straight Alliance, Relay for Life, and Youth to Youth. Several of these clubs have ties to national organizations and provide activities for students "outside of school." *Id.* After a two-year legal battle, Harrison High finally relented and recognized the YAF club.[6]

These cases, taken together, show a clear and troubling pattern. Eager students approach administrators about starting or advertising a SFLA or YAF club, and administrators respond by denying their request through ambiguity or pretext or by overtly declaring their political message or stance too controversial. This case clearly falls into that mold. Doc. 101 ¶¶ 344, 349; Doc. 158-30 at 1–3.

---

https://yaf.org/news/yaf-puts-ny-high-school-on-notice-for-refusing-to-recognize-young-americans-for-freedom-chapter-2/.

[6] Kara Zupkus, "VICTORY: High School YAF Chapter Secures Recognition After Legal Battle," *Young America's Foundation* (July 19, 2023), https://yaf.org/news/victory-high-school-yaf-chapter-secures-recognition-after-legal-battle/.

### b. A public high school may not limit a student's speech due to the student's political viewpoint without material and substantial proof of disruption.

The Supreme Court has declared that "[t]he government violates the Free Speech Clause of the First Amendment when it excludes a speaker from a speech forum the speaker is entitled to enter. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 865 (7th Cir. 2006) (citing *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819 (1995)). "The standards [a court] appl[ies] to determine whether a State has unconstitutionally excluded a private speaker from use of a public forum depend on the nature of the forum." *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001)(citing *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 44 (1983)). With respect to an open public forum, a state's restriction on speech is subject to strict scrutiny. *Walker*, 453 F.3d at 865.

Conversely, where "the State establishes a limited public forum, the State is not required to and does not allow persons to engage in every type of speech . . . [and] may be justified 'in reserving [its forum] for certain groups or for the discussion of certain topics.'" *Good News Club*, 533 U.S. at 106 (quoting *Rosenberger*, 515 U.S. at 829). However,

any "restriction must not discriminate against speech on the basis of viewpoint and the restriction must be 'reasonable in light of the purpose served by the forum.'" *Id.* (quoting *Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*, 473 U.S. 788, 806 (1985)).

With respect to a limited public forum, "the test for viewpoint discrimination is whether—within the relevant subject category—the government has singled out a subset of messages for disfavor based on the views expressed." *Matal v. Tam*, 137 S. Ct. 1744, 1766 (2017). For, "the danger of viewpoint discrimination is that the government is attempting to remove certain ideas or perspectives from a broader debate. That danger is all the greater if the ideas or perspectives are ones a particular audience might think offensive, at least at first hearing." *Id.* at 1767. "Once [the State] has opened a limited forum, however, the State must respect the lawful boundaries it has itself set." *Rosenberger*, 515 U.S. at 829; *see also* Elena Kagan, *The Changing Face of First Amendment Neutrality: R.A.V. v. St. Paul, Rust v. Sullivan and the Problem of Content-Based Underinclusion*, 1992 Sup. Ct. Rev. 29, 43 (1996) ("The government may not use its broad discretion over the

property it owns to advantage some viewpoints at the expense of others . . . .").

These well-settled constitutional principles apply on the high school campus, for students do not "…shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 506 (1969). Under the *Tinker* standard, school officials have the burden of justifying student speech restrictions by showing that, "…the speech in question would materially and substantially disrupt the work and discipline of the school or invade the rights of others." *Id.* at 509; *B.L.*, 594 U.S. at 187.

Further, student speech restrictions may not be viewpoint based. *Tinker* "…straight-forwardly tells us that, in order for school officials to justify prohibition of a particular expression of opinion, they must be able to show that this 'action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint.'" *Nuxoll ex rel. Nuxoll v. Indian Prairie Sch. Dist. # 204*, 523 F.3d 668, 676 (7th Cir. 2008).

The district court relied heavily on *Hazelwood Sch. Dist. v. Kuhlmeier* in granting Summary Judgment to the Defendants. Doc. 189 at 35; 484 U.S. 260 (1988). However, the Supreme Court's decision in *Hazelwood* clearly distinguished between a school promoting student speech in a school newspaper or school play and a school simply allowing individual student expression, as follows:

> The question whether the First Amendment requires a school to tolerate particular student speech—the question that we addressed in *Tinker*—is different from the question whether the First Amendment requires a school affirmatively to promote particular student speech. The former question addresses educators' ability to silence a student's personal expression that happens to occur on the school premises. The latter question concerns educators authority over school-sponsored publications, theatrical productions, and other expressive activities that students, parents, and members of the public might reasonably perceive to bear the imprimatur of the school. *Id.* at 569-70.

Because this case involves a proposed student flyer and not a school publication or play that bears the "imprimatur of the school," *Hazelwood* does not apply here. *See Id.*; Doc. 158-5 at 1, 5.

Further, even *Hazelwood* does not countenance viewpoint discrimination. A school may regulate school-sponsored speech that bears the imprimatur of the school if the school's actions "… are reasonably related to legitimate pedagogical concerns." *Id.* at 571.

Surely limiting a student's speech due to political viewpoint without reason or proof of substantial disruption falls outside the definition of a "legitimate pedagogical concern" even in the context of a school publication. *N.J. by Jacob v. Sonnabend*, 37 F.4th 412, 423 (7th Cir. 2022). Regardless, this case involves a proposed student flyer and is exactly the type of case that "directly and sharply" implicates the First Amendment. *Hazelwood*, 484 U.S. at 273.

Finally, because a prior restraint of speech carries with it an "immediate and irreversible sanction," it is the "most serious and the least tolerable infringement on First Amendment rights" and comes to court bearing a heavy presumption against its constitutional validity. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). This holds true in the public school context; and any law or policy that subjects First Amendment freedoms to a prior restraint is unconstitutional without narrow, objective, and definite standards to guide the government actor. *Burch v. Barker*, 861 F.2d 1149, 1154 (9th Cir. 1988); *Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 151 (1969).

In sum, a public high school may not limit a student's speech due to the student's political viewpoint without material and substantial proof of disruption.

### c. Noblesville High discriminated against E.D. because of her political viewpoint.

E.D. is exactly the type of hard-working and informed student that American high schools should encourage and support. Before her freshman year started, E.D. worked at an ice cream shop to raise funds, found a faculty sponsor for an SFLA club, and even took the initiative to schedule a meeting with school leadership to present her club idea. Doc. 152-2 at 5, 8, 545.

Instead of receiving clear and consistent direction from school leadership that would have encouraged E.D.'s First Amendment activity, E.D. received conflicting instructions that poorly masked the school's concern over the content of E.D.'s speech and especially the "Defund Planned Parenthood" image on her proposed flyer. Doc. 152-2 at 34-35. Defendant Luna explained that the school was "…dancing on eggshells," concerning controversies over "political ideology," and Principal McCaffrey took the unprecedented step of revoking the chapter's recognition as a student group because the proposed flyers

contained a "political" picture and were "not appropriate." Doc. 158-3;
Doc. 152-2 at 75.

Then, Principal McCaffrey took to the school's public
communication channel to accuse E.D., a freshman high school student
trying to navigate an unwritten school policy and conflicting
instructions from school leadership, of "multiple instances of disregard
for school protocols." Doc. 152-2 at 85.

Taken together, these actions clearly show that the
administration of Noblesville High School revoked the SFLA chapter's
status because of a political stance on proposed student flyer that the
administration considered inappropriate for school "due to the content."
Doc. 158-3; Doc. 152-2 at 75. And the administration did not and could
not put forward any proof of substantial disruption by the proposed
flyer because the administration censored E.D.'s speech prior to posting
the flyer. *Id.* This is a textbook example of viewpoint discrimination and
directly contravenes well-settled law on student political expression. *See
Tinker*, 393 U.S. at 506; *see Rosenberger,* 515 U.S. at 829.

Additionally, Noblesville High operated a limited open forum for
over 70 approved students groups, including Noblesville's Young

Democrats, Young Republicans, Gender and Sexuality Alliance, Black Student Union, CRU, and Fellowship of Christian Athletes. Doc. 158-30 at 1–3. Principal McCaffrey's decision to approve these groups as "appropriate" for campus while revoking the SFLA chapter's recognition due to a "political" picture shows that this decision was impermissibly motivated by the "…opinion or perspective of the speaker." See *Rosenberger*, 515 U.S. at 829.

Principal McCaffrey's decision to derecognize the SFLA chapter also constituted an unconstitutional prior restraint. Any policy that subjects First Amendment freedoms to a prior restraint is unconstitutional without narrow, objective, and definite standards to guide the government actor. *Burch*, 861 F.2d at 1154; *Shuttlesworth*, 394 U.S. at 151. And the school's "political" and "appropriate" standards grant school administrators "unbridled discretion" to discriminate based on viewpoint. Doc. 158-22 at 6; Doc. 152-2 at 67; Doc. 158-22 at 17; *see Southworth v. Bd. of Regents*, 307 F.3d 566, 579 (7th Cir. 2002).

Therefore, the district court's decision promotes censorship rather than constitutional rights at school. And the amici are gravely

concerned that this decision will be used as precedent to chill and even cancel their rights on other public school and university campuses.

## II. The District Court's Decision Concerning *Monell* Liability will Encourage other Constitutional Violations.

The District Court held that Principal McCaffrey did not have "responsib[ility] for establishing final government policy" covering student clubs and excused Noblesville High from liability. Doc. 189 at 23. This decision opens the door for school administrators to inflict constitutional injury with relative impunity and will have the effect of blocking harmed students from addressing those injuries in federal courts. See *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Kujawski v. Bd. Of Comm'rs*, 183 F.3d 734, 737 (7th Cir. 1999).

### a. The amici recognize a growing trend of public school administrators ignoring constitutional rights.

IFI is especially concerned by this decision due to repeated instances of school officials in Indiana ignoring the constitutional rights of parents and students. During the 2023 legislative session, IFI supported HB 1608, which requires school officials to notify parents within five (5) business days if a student requests a change to the student's "(1) name or (2) pronoun, title, or word to identify the

student."[7] This bill, passed by the Indiana legislature and signed into law by Governor Eric Holcomb, responded to reports that school administrators were withholding information about name changes and pronoun changes from the parents of students. *See* Ind. Code § 20-33-7.5-2.

Parents—not school administrators—have the right to direct the upbringing and care of their children, including their medical and mental health treatment. see *Wisconsin v. Yoder*, 406 U.S. 205, 217 (1972); see *Stanley v. Illinois*, 405 U. S. 645, 657-58 (1972); see *Parham v. J.R.*, 442 U.S.584, 604 (1979); see *Troxel v. Granville*, 530 U.S. 57, 68 (2000) (plurality opinion). And the Indiana General Assembly found sufficient evidence to require school officials in Indiana to respect these long-established constitutional rights. *See* Ind. Code § 20-33-7.5-2.

IFI also supported HB 1137 during the 2024 legislative session because a number of public school administrators were not cooperating with parents to allow their children to participate in religious release time instruction.[8] In 1952, the Supreme Court reviewed and approved

---

[7] 2023 Legislative Scorecard, *Indiana Family Institute*, https://hoosierfamily.org/news/slides/https-hoosierfamily-org-resources-legislative/.
[8] 2024 Legislative Agenda, *Indiana Family Institute*, https://hoosierfamily.org/issues/2024-legislative-agenda/.

the practice of releasing public school students to off-campus religious instruction during the school day with the conditions that the instruction be privately funded and authorized by the parents. *Zorach v. Clauson*, 343 U.S. 306, 315 (1952). Despite this well-settled precedent, a number of public school administrators in Indiana refused to adjust their school's schedule to accommodate the religious exercise of parents and their children. *See* Ind. Code § 20-33-2-19.

The Indiana General Assembly responded by requiring school administrators to cooperate with parents that request such instruction for their children, as follows: "When the parent of a student who is enrolled in a public school provides written notice, the principal shall allow the student to attend a school for religious instruction that is conducted by a church, an association of churches, or an association that is organized for religious instruction and incorporated under Indiana law." 2024 Ind. Legis. Serv. P.L. 138-2024 (H.E.A. 1137).

These two laws evidence a trend—recognized by IFI and the Indiana General Assembly—of school administrators ignoring constitutionally protected rights and practices of parents and students.

See Ind. Code § 20-33-7.5-2; see 2024 Ind. Legis. Serv. P.L. 138-2024

(H.E.A. 1137)(West).

IFI also recognizes that state legislation is a deliberative and often

reactive tool that cannot anticipate or correct every potential

constitutional infringement in the public school setting. *See Mitchum v.*

*Foster*, 407 U.S. 225, 242 (1972). That is why section 1983 is so critical

to students like E.D. and groups like SFLA and YAF. *Id.* The district

court's decision concerning *Monell* directly contradicts Indiana law,

greenlights future constitutional injuries, and should be reversed. Doc.

189 at 23; *see* Ind. Code § 20-33-8-10(a)-(b).

> **b.    A school principal in Indiana has final decision-making authority over regulations that govern student conduct.**

A school district can have *Monell* liability in three ways: (1) an

express policy caused the rights violation; (2) "a widespread practice

constituting custom or usage" caused the rights violation; or (3) a

violation by "a person with final policymaking authority." *Kujawski,* 183

F.3d at 737. A person's status as a final policymaker under § 1983 is a

question of state or local law. See *Pembaur v. City of Cincinnati*, 475

U.S. 469, 483 (1986).

The following factors are "helpful" in determining whether an official is a final decisionmaker: "(1) whether the official is constrained by policies of other officials or legislative bodies; (2) whether the official's decision on the issue in question is subject to meaningful review; and (3) "whether the policy decision purportedly made by the official is within the realm of the official's grant of authority." authority." *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 676 (7th Cir. 2009). Also "helpful" are the relevant customs and practices having the force of law. *Id.*

Under Indiana law, the principal of a school has final policymaking authority concerning regulations that govern student conduct. The "principal" is the "… chief administrative officer of a school." Ind. Code § 20-18-2-14. Further, according to Ind. Code § 20-33-8-10, "(a) a principal may take action concerning the principal's school or a school activity within the principal's jurisdiction that is reasonably necessary to carry out or prevent interference with an educational function or school purposes." The statute also contains this dispositive statement, "(b) Subsection (a) allows a principal to write regulations that govern student conduct." *Id.*

The district court cites *Harless by Harless v. Darr* for the proposition that school boards, not principals or superintendents, are the final policymakers under Indiana law. *See* 937 F. Supp. 1339, 1349 (S.D. Ind. 1996). However, this opinion relies on a repealed statute that states a principal's actions: "shall not be effective until they are reviewed and approved by the superintendent and until they shall be presented to the governing body." *Harless*, 937 F. Supp. at 1349; 1995 Ind. Legis. Serv. P.L. 131-1995, § 12 (H.E.A. 1279) (West). In contrast, Indiana law now clearly and specifically "…allows a principal to write regulations that govern student conduct." Ind. Code § 20-33-8-10.

A school board is authorized by statute to "exercise any power…which is reasonable from a business or education standpoint in carrying out school purposes of the school corporation," and that board may delegate final decision-making authority to the superintendent or principal on regulations that govern student conduct. *See* Ind. Code § 20-26-5-4 (20); *see* Ind. Code § 20-33-8-10; *see Valentino*, 575 F.3d at 676.

For example, the recent law addressing religious release time instruction requires principals—not school boards—to release students

to religious instruction off campus. *See* 2024 Ind. Legis. Serv. P.L. 138-2024 (H.E.A. 1137)("When the parent of a student who is enrolled in a public school provides written notice, the principal shall allow the student to attend a school for religious instruction...")

Why does this law require the principal and not the school board to release children to religious instruction? Because the Indiana General Assembly previously authorized principals to "…write regulations that govern student conduct," and the Indiana General Assembly recognized that school boards have delegated such decision-making power to principals. *Id.*; *see* Ind. Code § 20-33-8-10. In sum, under Indiana law, a principal has final decision-making authority concerning regulations that govern student conduct.

### c. Principal McCaffrey is a final decision-making authority for purposes of *Monell* liability.

In this case, Noblesville Schools clearly delegated final decision-making authority to Principal McCaffrey concerning student posters and club revocation. The school board chair understood that principals could and would write policy regarding clubs, that the school board would not review such a policy, and that the school board would have no "involvement" with it. Doc. 164-1 at 15. Superintendent Niedermeyer

also did not create or review the policy concerning students flyers and clubs, and the Student Handbook is silent on the subject. *Id.* at 3; Doc. 152-2 at 56, 104, 111–12.

Principal McCaffrey sits at the top of the Noblesville High organizational chart and oversees a one million square foot building with 3,200 students and 200 staff. Doc. 158-20 at 14; Doc. 158-21 at 5; Doc. 152-2 at 323. He developed the club approval form, created the custom concerning student flyers and clubs, and had the sole authority to revoke club status. Doc. 158-20 at 4; See Doc. 152-2 at 53; Doc. 158-3; Doc. 158-21 at 8.

Thus, his decision to revoke the SFLA chapter's status was the act of an individual with final decision-making authority; and *Monell* liability applies. Ind. Code § 20-33-8-10(b); *see Kujawski*, 183 F.3d at 737.

As noted above, the District Court's decision opens the door for repeated constitutional injury without redress under section 1983. Doc. 189 at 23. A school board can simply (1) avoid creating express policies on student expression and clubs or any other controversial topic that involves the constitutional rights of parents and students and (2)

delegate authority for such decisions to principals. *See Valentino*, 575 F.3d at 676. Principals, in turn, can create vague and conflicting customs or policies and even trample the constitutional rights of parents or students. *See* Doc. 158-3; Doc. 152-2 at 75. When the affected student or parent challenges that decision under section 1983, the school can simply wave off liability by claiming (as Noblesville High did here) that the school does not have an express policy and that the principal does not have final decision-making authority. Doc. 158 at 24-26.

Section 1983 "interpose[d] the federal courts between the States and the people, as guardians of the people's federal right—to protect the people from unconstitutional action under color of state law, whether that action be executive, legislative, or judicial." *Mitchum*, 407 U.S. at 242. The district court's decision in this matter effectively neutralizes those protections by giving principals unbridled discretion to censor student speech and violate other constitutional rights while avoiding liability under *Monell*.  Doc. 189 at 23. This is error and should be reversed.

As explained above, the amici are already experiencing significant discrimination and censorship on high school and college campuses. And they are gravely concerned that the district court's decision here will be used as precedent to further infringe on their constitutional protections.

## CONCLUSION

The task of administering a school with 3,200 students certainly comes with complexities, but respecting basic First Amendment rights is not one of them. As the Supreme Court set out in *Tinker*, students do not "…shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." 393 U.S. at 506. And schools may not discriminate based on the viewpoint of student organizations or enforce prior restraints using nebulous categories such as "political" or "appropriate." Doc. 158-22 at 6; Doc. 152-2 at 67; Doc. 158-22 at 17; *see Southworth*, 307 F.3d at 579. Instead of reinforcing basic constitutional protections, the district court excused Noblesville Schools from liability and encouraged future constitutional violations. For the above reasons, The district court incorrectly granted Defendants summary judgment

on Counts I, II, V, and VII, and should have granted Plaintiffs summary

judgment on those Counts.

Respectfully submitted,

/s/Joshua D. Hershberger
Joshua D. Hershberger
HERSHBERGER LAW OFFICE
P.O. Box 233
Hanover, Indiana 47243
(812) 228-8783
josh@hlo.legal
*Counsel for Amici Curiae*

June 10, 2024

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B) and 7th Cir. R. 29 because this brief contains 5,233 words, including words contained in the images and excluding parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in Word using a proportionally spaced typeface, 14-point Century Schoolbook.

June 10, 2024

/s/ Joshua D. Hershberger
Joshua D. Hershberger
Counsel for *Amici Curiae*

## CERTIFICATE OF SERVICE

I, Joshua D. Hershberger, counsel for amici curiae and a member of the Bar of this Court, certify that, on June 10, 2024, a copy of the attached Brief of Amici Curiae was filed with the Clerk and served on the parties through the Court's electronic filing system. I further certify that all parties required to be served have been served.

/s/ Joshua D. Hershberger
Joshua D. Hershberger
Counsel for *Amici Curiae*
