# APPEAL NO. 24-1608

# UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

E.D., a minor, by next friend
MICHAEL DUELL, et al.,
*Plaintiff-Appellants,*

v.

NOBLESVILLE SCHOOL DISTRICT, et al.,
*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division
Case No. 1:21-cv-03075-SEB-TAB
The Honorable Sarah Evan Barker

---

## BRIEF OF THE DEFENDANTS-APPELLEES,
## NOBLESVILLE SCHOOL DISTRICT, BETH NIEDERMEYER,
## CRAIG MCCAFFREY, JANAE MOBLEY, AND JEREMY LUNA

---

Liberty L. Roberts
Cassie N. Heeke
Church, Church Hittle + Antrim
Two North Ninth Street
Noblesville, IN 46060
317-773-2190
lroberts@cchalaw.com
cheeke@cchalaw.com

*Attorneys for Defendants-Appellees*

Save As          Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>24-1608</u>

Short Caption: <u>E.D., a minor, by next friend MICHAEL DUELL, et al. v. NOBLESVILLE SCHOOL DISTRICT, et al.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

<table>
<tr><td>☐</td><td><b>PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.</b></td></tr>
</table>

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

<u>Noblesville School District, Noblesville High School, Superintendent Beth Niedermeyer, Craig McCaffrey, Janae</u>

<u>Mobley, Jeremy Luna, Alexandra Snider Pasko, Alison Rootes, Allison Schwingendorf-Haley, Elizabeth Kizer, Emily</u>
<u>Patterson-Jackson, Grace Tuesca, and Stephanie Eads</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>Church Church Hittle + Antrim</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        <u>N/A</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        <u>N/A</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

<u>N/A</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

<u>N/A</u>

Attorney's Signature: <u>/s/ Liberty L. Roberts</u>    Date: <u>April 30, 2024</u>

Attorney's Printed Name: <u>Liberty L. Roberts</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑   No ☐

Address: <u>Two North Ninth Street, Noblesville, IN 46060</u>

Phone Number: <u>317-773-2190</u>    Fax Number: <u>317-773-5320</u>

E-Mail Address: <u>LRoberts@cchalaw.com</u>

rev. 12/19 AK

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 24-1608

Short Caption: E.D., a minor, by next friend MICHAEL DUELL, et al. v. NOBLESVILLE SCHOOL DISTRICT, et al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Noblesville School District, Noblesville High School, Superintendent Beth Niedermeyer, Craig McCaffrey, Janae

Mobley, Jeremy Luna, Alexandra Snider Pasko, Alison Rootes, Allison Schwingendorf-Haley, Elizabeth Kizer, Emily Patterson-Jackson, Grace Tuesca, and Stephanie Eads

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Church Church Hittle + Antrim

(3)     If the party, amicus or intervenor is a corporation:

   i)     Identify all its parent corporations, if any; and

          N/A

   ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

          N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

        N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

        N/A

Attorney's Signature: /s/ Cassie N. Heeke                    Date: May 1, 2024

Attorney's Printed Name: Cassie N. Heeke

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes ☐     No ✓

Address: Two North Ninth Street, Noblesville, IN 46060

Phone Number: 317-773-2190                    Fax Number: 317-773-5320

E-Mail Address: CHeeke@cchalaw.com

rev. 12/19 AK

ii

# Table of Contents

DISCLOSURE STATEMENT .......................................................................... i

TABLE OF CONTENTS ............................................................................... iii

TABLE OF AUTHORITIES ........................................................................... vi

JURISDICTIONAL STATEMENT ................................................................... 1

STATEMENT OF THE ISSUES .................................................................... 2

STATEMENT OF THE CASE ........................................................................ 3

    I.     Overview of the Parties .................................................................. 3

    II.    Noblesville Schools Student Clubs and Policies ........................... 3

    III.   2019 CRU Issue ............................................................................. 5

    IV.   Noblesville Students for Life Formation ...................................... 6

    V.    E.D's Proposed Flyers for NSFL Call-Out Meeting ...................... 9

    VI.   Second NFSL-related Meeting Involving E.D's Mother ............. 12

    VII.  Noblesville Students for Life Temporary Suspension ............... 13

    VIII. Corrections to Plaintiff's Statement of the Case ....................... 15

         a.  As a matter of undisputed fact, Dr. McCaffrey did not revoke NSFL's status because of the political content of E.D.'s proposed flyers .......... 15

         b.  Plaintiffs misconstrue the context and substance of Dr. McCaffrey's column in *The Times of Noblesville* ........................................................ 16

         c.  Plaintiffs mischaracterize Defendants' rules on student flyers in fall 2021 ................................................................................................................ 17

         d.  Plaintiffs misrepresent the evidence related to Dr. McCaffrey's role over student clubs .............................................................................. 18

    IX.   Relevant Procedural History .................................................... 20

SUMMARY OF THE ARGUMENT ........................................................... 21

ARGUMENT ....................................................................................... 23

I.    Standard of Review ........................................................... 23

II.    The District Court properly granted summary judgment for Noblesville Schools on Plaintiffs' First Amendment claims for alleged violations of the freedoms of speech and association, First Amendment retaliation, and alleged Equal Access Act violations ............................................... 24

a.    The District Court correctly analyzed Plaintiffs' claims against Noblesville Schools under *Monell* ........................................... 26

1.    Dr. McCaffrey is not a final policymaking authority for Noblesville Schools ........................................... 27

2.    Noblesville Schools did not delegate final policymaking authority over student clubs to Dr. McCaffrey ............... 29

b.    The rule at Noblesville High School that students were not permitted to hang flyers with political content on school walls did not violate Plaintiffs' First Amendment right to freedom of speech ...................... 32

1.    *Hazelwood School District v. Kuhlmeier* is indistinguishable from this case and applies the appropriate standard for analyzing Plaintiff's First Amendment free speech claim ......................................... 33

2.    Noblesville High School walls were a non-public forum . 34

3.    The rule regarding student club flyers was reasonable and viewpoint neutral ........................................... 36

4.    The rule regarding student club flyers did not give administrators unbridled discretion ................................ 39

5.    Strict scrutiny does not apply ........................................ 40

III.    The District Court correctly found no First Amendment retaliation related to NSFL revocation ................................................... 41

    a. The undisputed evidence demonstrates Dr. McCaffrey temporarily revoked NSFL due to factors unrelated to the content NSFL's or E.D.'s speech........................................................................................................... 42

    b. Dr McCaffrey is entitled to qualified immunity .................................... 45

    c. Plaintiffs waived any argument that Dr. Niedermeyer is responsible for First Amendment retaliation by abandoning all related argument during summary judgment briefing ........................................................ 46

VI.    Defendants did not violate the Equal Access Act .................................. 46

    a. Plaintiffs did not bring a claim under the Equal Access Act related to denial of NSFL's flyers and Plaintiff cannot add that claim on appeal… ...................................................................................................................... 47

    b. Dr. McCaffrey did not violate the Equal Access Act he temporarily revoked NSFL's approval, and no other individual Defendant was personally involved in the revocation .................................................... 49

CONCLUSION............................................................................................................ 50

CERTIFICATE OF COMPLIANCE.......................................................................... 51

CERTIFICATE OF SERVICE.................................................................................... 52

# Table of Authorities

CASES

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ................................... 23

*Ball v. City of Indianapolis,*
  760 F.3d 636 (7th Cir. 2014) .............................................................................. 30

*Bridges v. Gilbert,*
  557 F.3d 541 (7th Cir. 2009) .............................................................................. 42

*Carver Middle School Gay-Straight Alliance v. Sch. Bd. of Lake Cnty., Fla.,*
  249 F. Supp. 3d 1286 (M.D. Fla. 2017) ............................................................. 25

*Child Evangelism Fellowship of MD, Inc. v. Montgomery County Public Schools,*
  457 F.3d 376 (4th Cir.2006) ............................................................................... 39

*City of St. Louis v. Praprotnik,*
  485 U.S. 112, 108 S. Ct. 915, 99 L.Ed.2d 107 (1988) ....................................... 30

*Cornelius v. NAACP Legal Defense & Educational Fund, Inc.,*
  473 U.S. 788, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985) ................................ 35, 37

*Darchak v. City of Chicago Bd. Of Educ.,*
  580 F.3d 622 (7th Cir. 2009) .............................................................................. 29

*Ennin v. CNH Indus. Am., LLC,*
  878 F.3d 590 (7th Cir. 2017) .............................................................................. 46

*Frederickson v. Landeros,*
  943 F.3d 1054 (7th Cir. 2019) ............................................................................ 45

*Forsyth Cnty., Ga. v. Nationalist Movement,*
  505 U.S. 123, 112 S. Ct. 2395, 120 L.Ed.2d 101 (1992) ................................... 40

*Gernetzke v. Kenosha Unified Sch. Dist. No. 1,*
  274 F.3d 464 (7th Cir. 2001) .................................... 26, 29, 30, 31, 32, 37, 38, 49

*Griffin v. Sec'y of Veterans Affairs,*
  288 F.3d 1309 (Fed. Cir. 2002) .......................................................................... 39

vi

*Harless by Harless v. Darr,*
    937 F. Supp. 1339 (S.D. Ind. 1996) ...................................................... 27, 28, 29

*Harlow v. Fitzgerald,*
    457 U.S. 800, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982) ............................. 45, 46

*Hazelwood School District v. Kuhlmeier,*
    484 U.S. 260, 108 S. Ct. 562, 98 L.Ed.2d 592 (1998) ............. 22, 33, 34, 35, 37

*Hedges v. Wauconda Cmty. Unit Sch. Dist. No. 118*
    9 F.3d 1295 (7th Cir. 1993) .................................................................... 34

*John K. MacIver Inst. for Pub. Policy v. Evers,*
    994 F.3d 602 (7th Cir. 2021) ................................................................. 35, 36

*Kelly v. Mun. Cts. of Marion Cnty., Ind.,*
    97 F.3d 90 (7th Cir. 1996) ..................................................................... 47

*Kemp v. Liebel,*
    877 F.3d 346 (7th Cir. 2017) ................................................................. 23

*Kristofek v. Village of Orland Hills,*
    712 F.3d 979 (7th Cir. 2013) ................................................................. 30

*Messerschmidt v. Millender,*
    565 U.S. 535, 132 S. Ct. 1235, 182 L. Ed. 2d 47 (2012) ..................................... 45

*Milchtein v. Milwaukee Cnty.,*
    42 F.4th 814 (7th Cir. 2022) ................................................................. 26

*Milestone v. City of Monroe, Wis.,*
    665 F.3d 774 (7th Cir. 2011) ................................................................. 41

*Minnesota Voters Alliance v. Mansky,*
    585 U.S. 1, 201 L. Ed. 2d 201, 138 S. Ct. 1876 (2018) ..................................... 34

*Monell v. Department of Social Services,*
    436 U.S. 658 (1978) .............................................................................. 25

*MSD of Martinsville v. Jackson,*
    9 N.E.3d 230 (Ind. Ct. App. 2014) ........................................................ 28

*Muller by Muller v. Jefferson Lighthouse School,*
    98 F.3d 1530 (7th Cir. 1996) ................................................................. 33, 34, 37

*Nichols v. Michigan City Plant Plan. Dep't,*
    755 F.3d 594 (7th Cir. 2014)............................................................. 46

*N.J. by Jacob v. Sonnabend,*
    98 F.3d 1530 (7th Cir. 1996)......................................................... 34, 37

*Oliver by Hines v. McClung,*
    919 F. Supp. 1206 (N.D. Ind. 1995)................................................. 28

*Pembaur v. City of Cincinnati,*
    475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) ...................... 27

*Perry Ed. Assn. v. Perry Local Educators' Assn.,*
    460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983) ..................... 35, 41

*Ridley v. Massachusetts Bay Transp. Auth.,*
    390 F.3d 65 (1st Cir. 2004) ............................................................ 39

*Siddique v. Laliberte,*
    972 F.3d 898 (7th Cir. 2020)........................................................... 45

*Tinker v. Des Moines Independent Community School District,*
    393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). ....................... 33

*Walker v. Sheahan,*
    526 F.3d 973 (7th Cir. 2008)........................................................... 26

*Wesley v. S. Bend Cmty Sch. Corp.,*
    Case No. 3:19-cv-00032, 2019 WL 5579159 (N.D. Ind. 2019) ........... 29

*Wheeler v. Hronopoulos,*
    891 F.3d 1072 (7th Cir. 2018)......................................................... 48

*Wisconsin Interscholastic Athletic Ass'n v. Gannett Co.,*
    716 F. Supp. 2d 773 (W.D. Wis. 2010) ............................................ 39

*Wisconsin Interscholastic Athletic Ass'n v. Gannett Co.,*
    658 F. 3d. 614 (7th Cir. 2011)......................................................... 39

*Woodruff v. Mason,*
    542 F.3d 545 (7th Cir. 2008)........................................................... 42

FEDERAL STATUTES

20 U.S.C. § 4071 ................................................................................ 44

20 U.S.C. § 4071(a) ...................................................................... 47, 48

20 U.S.C. § 4071(f) ........................................................................... 49

STATE STATUTES

Ind. Code § 20-5-2-2(17), *recodified as* § 20-26-5-4 .................................... 29

Ind. Code § 20-8.1-5-3 ........................................................................ 29

Ind. Code § 20-26-5-4(18) ............................................................... 3, 31

# JURISDICTIONAL STATEMENT

Appellants' jurisdictional statement is not complete and correct.

The United States District Court for the Southern District of Indiana had jurisdiction of this case pursuant to 28 U.S.C. § 1331. The District Court had federal question jurisdiction because the matter in controversy arose under the laws of the United States, specifically 42 U.S.C. § 1983, the First Amendment to the United States Constitution, the Fourteenth Amendment to the United States Constitution, and the Equal Access Act, 20 U.SC. § 4071. The District Court had supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367 because those claims arose out of the same case or controversy as the federal claims.

This is an appeal from a summary judgment order which resulted in the entry of final judgment disposing of all the parties' claims. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

On March 15, 2024, the District Court entered its Order on Cross Motions for Summary Judgment. Doc. 189. On March 15, 2024, the District Court entered Final Judgment in favor of Defendants and against Plaintiffs. Doc 190. On April 15, 2024, Plaintiffs filed their Notice of Appeal within the time permitted by 28 U.S.C. § 2107.

**STATEMENT OF THE ISSUE**

Whether the District Court properly concluded there was no violation of the First Amendment or the Equal Access Act when a high school principal temporarily revoked a student club's ability to meet at school due to specific concerns that the club was not a student-led and student-driven club and because of the student's refusal to comply with instructions for making signs announcing the club's call-out meeting?

**STATEMENT OF THE CASE[1]**

## I.    *Overview of the Parties*

Noblesville Schools is a public school district in Noblesville, Indiana. In fall

2021, when the events underlying this lawsuit took place, Dr. Craig McCaffrey was

the principal of Noblesville High School ("NHS"); Janae Mobley was Assistant

Principal at NHS; Jeremy Luna was Dean of Students at NHS; and Beth

Niedermeyer was Noblesville Schools Superintendent. Doc. 158-25 at 1 (Affidavit of

Craig McCaffrey, ¶ 3, 8). E.D. was a freshman at NHS, and Noblesville Students for

Life is the pro-life student interest club E.D. started at NHS. Doc. 43 at 10, ¶ 93, 95.

Micheal Duell and Lisa Duell are E.D.'s parents. *Id.* at 5, ¶ 29, 30.

## II.    *Noblesville Schools Student Clubs and Policies*

There are various types of student groups at Noblesville High School, including

school clubs, student interest clubs, academic teams, extra-curricular activities, and

co-curricular activities. Doc. 158-25 at 2 (McCaffrey Aff., ¶ 9-10). School clubs,

academic teams, extra-curricular activities, and co-curricular activities are school

sponsored groups with a school-approved adult actively involved in organizing and

running the group. Id. (¶ 9). Student interest clubs are founded by students who

want to come together with other students of similar interests. Those groups are

student-driven and student-led. An adult is present to supervise as the students use

---

[1] All references to "Doc." Refer to documents filed with the District Court and are

identified by ECF number. All references to "App. Doc." Refer to documents filed

with this court and are identified by ECF number.

the school facilities, but the adult does not actively participate in the club. *Id.* (¶ 10); Doc. 158-20 at 7-8 (McCaffrey Dep. I, 37:25-38:13).

In fall 2021, Noblesville High School had several student interest clubs, including, but not limited to, Conservation Club, CRU (Campus Crusade for Christ), FCA (Fellowship of Christian Athletes), GSA (Gender and Sexuality Alliance), Key Club, Leo Club, Noblesville Young Democrats, Young Republicans, and Police Explorers. Doc. 158-30 at 1-2 (Emails Re: Club List for Fall 2021). During the 2021-2022 school year, Noblesville Schools did not have written rules or policies on the process for starting a new student interest club. Doc. 158-21 at 3 (McCaffrey Dep. II, 24:15-25:8). Rather, a student with a club proposal would be instructed to find a faculty sponsor and fill out a brief questionnaire. Doc. 158-20 at 3-4 (McCaffrey Dep. I, 21:10 23:23). Students would bring questions to their sponsor, who would help with supervision and logistics. *Id.* at 7-8 (McCaffrey Dep. I, 37:20-38:8).

At the time of the events alleged in the Amended Complaint, the 2021-2022 Noblesville High School Student Handbook provided applicable rules regarding flyers. The 2021-2022 Handbook complete rule regarding posters provided:

> Any materials posted at NHS must be posted only in the cafeteria and/or commons areas, and they should be removed after the date of the event. Posters must promote a school-sponsored event or have administrative approval to be posted.

> If materials promote a non-school event, they must list the sponsoring group. The sponsoring group must be local, must be clearly named on the posters, and must be a non-for-profit organization. The event itself must be educational in nature.

Doc. 158-13 at 2 (NHS Student Handbook 2021-22 at 59). This is the policy Plaintiffs incorrectly refer to, throughout their Brief, as the "*Prior Restraint Policy.*" The title of the policy is "Posters." Doc. 158-13 at 2.

The Noblesville Schools School Board is the final decisionmaker with authority to approve the provisions of—and any changes to—the Handbook. Doc. 158-21 at 6 (McCaffrey Dep. II, 42:3-18). The guidance on what could be on student club call-out flyers was established and known by school administrators and club sponsors: Flyers for club call-out meetings were to have the name of the club and the date, time, and location of the meeting, and they could not contain anything disruptive to the school environment. Doc. 158-27 at 10-11 (Swafford Dep., 34:18-35:12); Doc. 158-22 at 5 (Mobley Dep. I, 15:13-19).

Noblesville Schools did not permit students to hang posters on the walls without approval from an administrator. Doc. 158-22 at 4 (Mobley Dep. I, 14:22-25). All approved posters had a handwritten take-down date and the initials of the administrator that approved them, and they were hung with blue tape. Doc. 158-27 at 3, 4, 7 (Swafford Dep., 19:19-20:20, 31:2-10). In fall 2021, there were limited areas where students were permitted to hang physical posters. These included the main hallway of the freshman center, near bus entrances, the cafeteria, and near the auditorium. Doc. 158-27 at 13 (Swafford Dep, 37:9-20).

### III. *2019 CRU Issue*

In 2019, Dr. McCaffrey received complaints that an adult was participating in meetings of the student club Crusade for Christ ("CRU") at NHS, along with a

threat of litigation by the Freedom from Religion Foundation. Doc. 158-21 at 10-11 (McCaffrey Dep. II, 135:5-136:18). Dr. McCaffrey investigated the complaints by watching videos of CRU meetings and found that no adults spoke during the meetings, so he had no cause to take any corrective action. Doc. 158-21 at 10-11 (McCaffrey Dep. II, 135:5-136:18). Other than the 2019 complaint about CRU, there has been no other issue with suspected adult involvement in a student interest club since Dr. McCaffrey has been principal, until the issue arose with NSFL. Doc. 158-21 at 9 (McCaffrey Dep. II, 132:9-15).

## IV.    *Noblesville Students for Life Formation*

On August 3, 2021, E.D., an incoming freshman, and her mother, Lisa Duell, met with Dr. McCaffrey to discuss forming a new club at NHS titled Noblesville Students for Life ("NSFL"). Doc. 158-18 at 3 (E.D. Dep. I, 13:4-23). Ms. Duell audio-recorded that meeting at E.D.'s request, in case Dr. McCaffrey gave "discriminatory or other false reason to not permit" NSFL. Doc. 158-18 at 3-4 (E.D. Dep. I, 13:4-14:3). E.D. had no reason to believe Dr. McCaffrey would not permit her club other than her incorrect perception that there were no other conservative clubs at the high school. *Id.* at 14 (E.D. Dep., 14:4-9). Assuming Dr. McCaffrey would deny her club, E.D. "wanted to be able to pursue the steps necessary to make sure [she] did get [her] club." Doc. 158-18 at 3-4 (E.D. Dep. I, 13:21-14:3). E.D. wrote in her journal that she imagined herself in "incredible and brave scenarios of potentially suing [her] school, hosting fiery debates, delivering impassioned speeches, somehow winding up on the Ben Shapiro show, testifying before the Supreme Court, etc." Doc. 158-15; Doc. 158-19 at 27 (E.D. Dep. II, 57:3-10, 67:25-69:15).

E.D. told Dr. McCaffrey she wanted to start NSFL and relayed the club's pro-life mission statement. Doc. 158-28 at 4-5 (L. Duell Dep., 15:25-16:15); Doc. 159 (recording of meeting); Doc. 158-18 at 7-8 (E.D. Dep. I, 17:12-18:13). At the meeting with Dr. McCaffrey, Ms. Duell participated in the conversation, including to:

a. Ask Dr. McCaffrey when the clubs fair would be;

b. Ask Dr. McCaffrey what the process was for a speaker to come in and talk to the club;

c. Ask whether E.D. "fills out a form and talks to her sponsor, and that's it?" for a speaker to come in;

d. Ask whether NSFL would have a booth at NHS's activities fair, and whether E.D. should make something for the fair;

e. Help explain Students For Life of America's ("SFLA") involvement to Dr. McCaffrey by asking E.D. to clarify whether SFLA were making NSFL adhere to a code a conduct;

f. Ask E.D. whether she saw anything in the contract provided by SFLA about SFLA using photos of NHS; and

g. Engage in a back-and-forth conversation with Dr. McCaffrey about a prior situation with student photos showing up on an organization's website.

Doc. 158-19 at 9-18 (E.D. Dep. II, 15:7-25:10; 92:24-93:18); Doc. 159 (recording of meeting). Dr. McCaffrey specifically stated during the meeting that, because NSFL

would be designated as a student interest club, it was important that the club be student-based. Doc 159 (recording of meeting).

Dr. McCaffrey told E.D. the next steps she needed to take to get NSFL approved and provided E.D. with a questionnaire titled "Club Proposal Questions." Doc. 158-18 at 11 (E.D. Dep. I, 21:5-16). E.D. completed the questionnaire and returned her responses to Dr. McCaffrey. *Id.* (E.D. Dep. I, 21:17-23). In her responses, E.D. advised the club would "empower students to knowledgably and courageously speak about abortion"; "bring awareness to the abortion issue and positively impact [E.D.'s] peers' respect and value for life and the unborn"; participate in "national pro-life days"; and provide speakers to "present on pro-life topic[s]." Doc. 158-20 at 4-5 (McCaffrey Dep. I, 23:1-24:24); Doc. 158-18 at 11 (E.D. Dep. I, 21:5-22:2); Doc. 158-1; Doc. 158-2. Her plans for the club's activities included "flyering, tabling, chalking, volunteering at a local pregnancy resource center, participating on national pro-life days, and conducting drives for various needs [the] local pregnancy resource center may have." Doc. 158-2. After receiving E.D.'s answers to the Club Proposal Questions, Dr. McCaffrey approved NSFL as a student interest club. Doc. 158-18 at 11-12 (E.D. Dep. I, 21:5-22:25).

A few weeks later, on August 19, 2021, NSFL had a booth at the fall 2021 activities fair, along with all other clubs, and E.D. spoke with students walking by about NSFL. Doc. 158-18 at 14 (E.D. Dep. I, 24:12-16). E.D. manned the NSFL booth at the 2021 activities fair while wearing a shirt that stated, "I am the pro-life generation." Doc. 158-19 at 19-23 (E.D. Dep. II, 40:23-44:8). The booth had a tri-fold

poster display E.D. created with NSFL's mission statement and a sign that stated, "I am the pro-life generation." *Id*. Noblesville Schools did not prohibit E.D. from displaying any of the pro-life items at her booth. *Id*. E.D. also advertised the activities in which NSFL would participate in the future, including a trip to Washington, D.C. Doc. 158-18 at 16 (E.D. Dep. I at 26:16-18).

## V.     *E.D.'s Proposed Flyers for NSFL Call-Out Meeting*

On August 31, 2021, E.D. emailed Assistant Principal Janae Mobley digital copies of the two flyers she wanted to post in the school to advertise the call-out meeting for NSFL. Doc. 158-5 at 1-3. Both flyers contained photographs of protestors in front of the U.S. Supreme Court building in Washington, D.C., carrying signs that read, "Defund Planned Parenthood" and "I Am The Pro-Life Generation." *Id*. at 2-3. The proposed flyers also contained text that stated, "Pro-Life Students, It's Time to Meet Up!" and the following words followed by blank spaces for the student to fill in: "Topic:," "When:," "Where:," and "Sponsored By:." *Id*.. At the bottom of the page, there was a very small logo for Students for Life of America. *Id*. The flyers were not filled in and did not anywhere state "Noblesville Students for Life" or "Call-out." *Id*.




The next morning, on September 1, 2021, Ms. Mobley responded to E.D.'s email with the proposed flyers as follows:



Doc. 158-5 at 4. Ms. Mobley emailed Mr. McCauley to ask him to work with E.D. on a revised version of the flyers. *Id.*

Less than one hour later, Mr. McCauley sent an email to E.D. stating as follows:



*Id.* Later that evening, E.D. informed Mr. McCauley in their email exchange that she wanted to use the template flyers from the Students for Life website:



*Id.* at 5. Mr. McCauley responded the next morning, September 2, 2021, at 9:29 a.m.:



Brian McCauley <brian_mccauley@nobl.k12.in.us>
To: ████████████████████████

Thu, Sep 2, 2021 at 9:29 AM

I'll email Mr. Luna today to see if having the NSFL call out meeting on 9/9 at 2:40 is fine.

Also, I think it is best just to have this info only on the flyers: (no pictures, etc.)

Noblesville Students for Life Club

Meeting Date: ???

Meeting time: ???

Meeting location: ???

Send me a pic of the final flyer and we'll get it figured out.

have a great day,
Mr. McCauley

*Id*. Less than an hour later, E.D. responded to Mr. McCauley:

To: Brian McCauley <brian_mccauley@nobl.k12.in.us>

Thu, Sep 2, 2021 at 10:14 AM

Sounds good, thanks! I'll get to work on making the flyers.
[Quoted text hidden]

*Id*.

## VI.    Second NFSL-related Meeting Involving E.D.'s Mother

The following morning, September 3, 2021, E.D. and Mrs. Duell unexpectedly arrived at school for an unscheduled meeting with Mr. Luna, where E.D. showed Mr. Luna the same flyers she presented to Ms. Mobley. Doc. 158-18 at 17-19 (E.D. Dep. I, 46:3-7; 48:9-10); Doc. 158-23 at 4 (Luna Dep. I, 35:14-36:9). E.D. did not show Mr. Luna the email where Ms. Mobley explained why she was not approving the flyers and does not recall if she mentioned the email with Ms. Mobley's explanation or the specific reasoning Ms. Mobley provided. Doc. 158-18 at 18-19 (E.D. Dep. I, 47:10-48:8). Mr. Luna advised the flyer could not have a political photo of a "picket" with multiple signs reading "Defund Planned Parenthood." Doc. 158-23

at 9-10 (Luna Dep. I, 40:8-21; 41:9-15). E.D. asked Mr. Luna if she could hang the flyers if she removed the "Defund Planned Parenthood" signs. Doc. 158-18 at 20-21 (E.D. Dep. I, 49:23-50:4). Mr. Luna said that "should" or "would possibly" work. Doc. 158-23 at 11 (Luna Dep. I, 42:1-16). At some point, Mr. Luna mentioned the school was already walking or dancing "on eggshells." E.D. did not ask Mr. Luna what he meant by this comment, but she assumed he was talking about political ideology. Doc. 158-18 at 20 (E.D. Dep. I, 49:16-22).

## VII. Noblesville Students for Life Temporary Suspension

Immediately after the meeting, Mr. Luna saw Dr. McCaffrey and Ms. Mobley in Dr. McCaffrey's office and went to ask them about club flyers and call-out meetings. Doc. 158-23 at 14-15 (Luna Dep. I, 45:17-46:2). Mr. Luna summarized the meeting with E.D. and her mother to Dr. McCaffrey and Ms. Mobley. *Id.* at 15 (Luna Dep. I, 46:3-14; Doc. 158-20 (McCaffrey Dep. I, 105:4-23). Mr. Luna advised his impression from the meeting with E.D. and Mrs. Duell was that it was a three-way conversation with Mrs. Duell driving the conversation. Doc. 158-23 at 14-16 (Luna Dep. I, 45:17-47:9). Ms. Mobley informed Dr. McCaffrey during the meeting that E.D. had already presented the same flyers to her for approval, that she had turned them down, and that there was a plan in place to correct them. Doc. 158-20 (McCaffrey Dep. I, 103:2-14). Dr. McCaffrey and Ms. Mobley expressed concerns about Mrs. Duell's participation in E.D.'s meetings about NSFL. Doc. 158-23 at 24-25 (Luna Dep. I, 62:19-63:20); Doc. 158-22 at 8 (Mobley Dep. I, 35:2-15).

After the discussion between Dr. McCaffrey, Mr. Luna, and Ms. Mobley, Dr.

McCaffrey emailed Mrs. Duell. The email stated, in full, as follows:

**Dr. Craig McCaffrey** <craig_mccaffrey@nobl.k12.in.us>                    Fri, Sep 3, 2021 at 11:57 AM
To: ███████████████
Bcc: janae_mobley@nobl.k12.in.us

Mrs. ████████

Today Mr. Luna stated that you came in with ████ to talk to him about the club ████ wanted to start as that you had questions about posters.

I wanted to clarify some points about student interest clubs and our process.

When your daughter scheduled a meeting with me to talk about the club it was unusual and orthodox for a parent to be present. We continued the meeting because ████ did all of the talking and did a good job of representing what she wanted to do. When Mr. Luna talked to you he thought it was about the incident in the cafe, but it was not. Again it was you with ████ in regard to the club she wants to start.

Please understand that student interest clubs are 100% student-driven and can have no involvement from any adult. Students get a teacher sponsor to meet the supervision requirement but even the teacher cannot have anything to do with the club other than advising on school rules and policy and making sure everyone is safe.

████ talked to Mrs. Mobley, who is over clubs, about the posters she wanted to hang up for the club and was told that the poster was not appropriate for school due to the content. ████ was told what was appropriate to have on an advertising poster.

I am not sure why after this feedback that you came in again with ████ to talk about the club and the posters that were already denied by Mrs. Mobley. A poster cannot contain any content that is political or that could disrupt the school environment. Club advertising posters only state the name of the club and the details of the meeting time and location. When the students actually meet they are able to talk about their common interests.

At this point, I am not confident that this club is a student-driven club and therefore am removing the club's approval to meet in school. I will inform Mr. McCauley that his services are not needed at this time.

After the club fair, we began revamping our club approval process to update it to handle the large number of requests we were getting along with the wide range of interest requests. While we are updating our process we have stopped taking new requests at this time. We will have the new process in place for the second semester. If ████ wants to apply for her club again next semester she can reach out to Mrs. Mobley in January and ask for the updated application.

Sincerely,
Craig McCaffrey

Doc. 158-3.

The decision to temporarily revoke NSFL's approved status at NHS was Dr.

McCaffrey's alone. Doc. 158-20 at 22 (McCaffrey Dep. I, 108:3-7, 108:22-24); Doc.

158-21 at 8 (McCaffrey Dep. II, 128:18-22). Dr. McCaffrey informed Dr. Nieder-

meyer of his decision to revoke NSFL only after he sent the revocation email to Mrs.

Duell. Doc. 158-20 at 24 (McCaffrey Dep. I, 131:10-15). When Dr. McCaffrey spoke to Dr. Niedermeyer after the revocation, he informed her he felt E.D.'s mother was too involved, that he had not seen that level of involvement from a parent before, and that it caused him pause, so he wanted to temporarily suspend the club's status to allow the student time to regroup and reapply in January. Doc. 164-1 at 5 (Niedermeyer Dep. at 40:18-41:9).

Dr. McCaffrey, Ms. Mobley, and Mr. Luna are all pro-life, and their personal views on abortion align with the viewpoint and mission of NSFL. Doc. 158-20 at 26 (McCaffrey Dep. I, 148:5-7); 158-22 at 11 (Mobley Dep. I, 41:21-43:1); Doc. 158-23 at 20 (Luna Dep. I, 58:15-19). NHS has previously had at least one pro-life club, and there is no evidence that any prior clubs were revoked or denied approval. Doc. 158-20 at 25 (McCaffrey Dep. I, 147:7-21); Doc. 158-24 at 3 (Niedermeyer Dep., 50:16-51:3).

## VIII.   *Corrections to Plaintiffs' Statement of the Case*

### a. **As a matter of undisputed fact, Dr. McCaffrey did not revoke NSFL's status because of the political content of E.D.'s proposed flyers.**

Plaintiffs assert in their Statement of the Case that Dr. McCaffrey revoked NSFL's status because of the political content of E.D.'s proposed flyers. App. Doc. 14 at 10. This statement is not factual, and there is no accompanying citation to the record. All the evidence regarding Dr. McCaffrey's reasoning for temporarily revoking NSFL reflects that he was concerned about Mrs. Duell's involvement, particularly after the 2019 CRU incident, and this concern was compounded by the fact that Mrs. Duell accompanied E.D. while she attempted to gain approval for a

poster that Ms. Mobley *and* Mr. McCauley had previously denied. Doc. 158-5; 158-3. Plaintiff's cite to no evidence in the record creating any material fact in dispute as to Dr. McCaffrey's explanations of his reasoning, the testimony of those who spoke with him before and after he revoked the club's approval, and the express statements in his email to Mrs. Duell explaining the revocation.

### b. Plaintiffs misconstrue the context and substance of Dr. McCaffrey's column in *The Times of Noblesville*.

Plaintiffs accuse Dr. McCaffrey of publicly accusing E.D. "multiple instances of disregard to school protocols" via a column in *The Times of Noblesville*. App. Doc. 14 at 111-12. Plaintiffs represent that Dr. McCaffrey named E.D. in his column and also that he referred specifically to E.D.'s proposed flyer, her discussion with Dean Luna, and Mrs. Duell's presence at two meetings. App. Doc. 14 at 11-12. Dr. McCaffrey did neither. Dr. McCaffrey's article was in direct response to an article by E.D.'s pastor, Micah Beckwith, titled, "What's Up with Discrimination at Noblesville High School?" *See* Doc. 152-2 at 78 (McCaffrey Dep. I, 133:3-24). Defendants disagree that the article is material to any of the issues raised by Plaintiffs' appeal, but to the extent the Court might find the article relevant to Plaintiffs' First Amendment retaliation claim, the article is reproduced in full below to speak for itself, deprived of Plaintiffs' characterizations.



I'm writing in response to the guest column that ran in the Times (Friday) accusing Noblesville High School of discriminating against a student's request to start a pro-life club.

The community should know that NHS supports students forming clubs they're passionate about and we maintain dozens of student-led clubs that represent a wide range of interests, activities, and beliefs.

We have had pro-life clubs in past years, and in fact this student's club was approved, sponsored by high school faculty, and recruiting students this year.

It was recently suspended – not because of the beliefs of the student or mission of the club – but due to multiple instances of disregard for school protocols.

All student special interest clubs must be initiated and led by students – they cannot be directed or controlled by school staff or others in the community. This ensures compliance with state laws and school policies.

We're currently working with this student to ensure compliance and expect this club to be reactivated soon.

I invite and encourage community members to contact me directly when they have questions about Noblesville High School to ensure they have a complete view of a situation. While I'm not always able to share confidential details, providing accurate information to the public is a high priority for me and other Noblesville Schools leaders. I can be reached at craig_mccaffrey@nobl.k12.in.us or (317) 773-4680 .

Dr. Craig McCaffrey is the principal at Noblesville High School.

Dr. Craig McCaffrey

Doc. 152-2 at 85.

### c. Plaintiffs mischaracterize Defendants' rules on student flyers in fall 2021.

Plaintiffs designate Defendants' simple practice of not allowing political or disruptive content on school walls a "*Censorship Custom*." App. Doc. 14 at 12-13. Plaintiffs attempt to negatively characterize this practice through selective quoting from Defendants' deposition testimony, such as claiming Ms. Mobley "understood 'political' to implement a 'really broad and vague' standard," when that was not Ms. Mobley's testimony. Rather, Ms. Mobley's testimony was as follows:

| Q. | How about a graphic like if a student designs like a graphic; is that allowed to be on a poster? |
|----|---|
| A. | I think it would probably depend on the graphic. |
| Q. | Okay. How would you determine whether it's okay? |
| A. | My—my understanding is that it's no pictures, and that has kind of been my rule of thumb. |
| Q. | Okay. |
| A. | But I think it would depend on the nature of the graphic, and I know that is *really broad and vague*, but. |
| Q. | Can you give us some examples of posters with a graphic art image that would not be allowed, maybe ones that you've seen? |
| A. | I would just say anything political in nature, any like foreseeable disruption, any lude speech, anything like that, kind of our—our normal baseline for what is posted on the walls in the school. |

Doc. 152-2 at 335-336 (Mobley Dep. I, 16:6-17:1) (emphasis added). Plaintiffs' characterizations made through selective quoting are not evidence.

### d. Plaintiffs mispresent the evidence related to Dr. McCaffrey's role over student clubs.

While it is true that Dr. McCaffrey undertook to create a clearer, cleaner process for students to form clubs at Noblesville High School, it is incorrect to call these changes "policy revisions" as though Dr. McCaffrey was creating policy for the school district. *See* App. Doc. 14 at 14. The deposition testimony Plaintiffs cite in support of their assertion that Dr. McCaffrey "worked on policy revisions" makes no reference to "policies." Doc. 152-2 at 56 (McCaffrey Dep. I, 50:1-25) (responding to counsel's question, "When have these or others rules, practices, and procedures, been memorialized in writing?". It is also untrue that Dr. McCaffrey "alone" had the power to revoke recognition from student groups. *See* App. Doc. 14 at 14. The

record reflects only that Dr. McCaffrey, alone, made the decision to revoke NSFL—not that he was the only person capable of doing so. *See* Doc. 158 at 20; Doc. 158-21 at 8.

To the extent Plaintiffs rely on Indiana statutes to establish facts pertinent to their *Monell* claims, Defendants address those statutes in their Argument, *infra*. But Plaintiffs' statement of the Noblesville Schools Board Chair does merit correction. Plaintiffs assert that the Board Chair, Joe Forgey, "understood that principals would likely write policy 'regarding clubs.'" App. Doc. 14 at 15. Later in their Brief, Plaintiffs inaccurately state that Mr. Forgey "testified that the principal would write policy governing student clubs," App. Doc. 14 at 53, Mr. Forgey's cited testimony is set forth in complete pertinent part below:

> Q. But do you know at the beginning of the fall semester of 2021 to '22 what the student procedure was regarding clubs, if a student wanted to make a club at the high school?
>
> A. I do not.
>
> Q. Okay. Is that the sort of procedure something that the superintendent would write or the principal?
>
> A. My guess—I don't know for sure. My guess is the principal would write it.
>
> Q. Okay.
>
> A. Or—or some of his assistant principals. Somebody at the principal level would be my guess, but I don't know for sure.
>
> Q. Is that the sort of policy that the board would even see?
>
> A. What, about clubs? No.
>
> Q. Okay. How about anything regarding clubs, like when they could meet, what rooms they could meet in, could they post fliers, that sort of thing?

| A. | No, I wouldn't—wouldn't have any involvement. |
| Q. | Okay. |
| A. | Or the board wouldn't. I—again, I'm speaking for myself. I don't think the board would have any involvement at our level on that. |

Doc. 164-1 at 14-15 (Forgey Dep., 35:25-36:23). In summary, Plaintiffs' counsel used the word "policy" in place of "procedure" at one point during the questioning and now attempts to ascribe that word to Mr. Forgey. *Id.*

## IX.   *Relevant Procedural History*

As pertinent to their appeal, Plaintiffs filed suit under the First Amendment, Fourteenth Amendment, and the Equal Access Act for the denial of E.D.'s preferred call-out meeting flyers and the temporary revocation of NSFL.[2] The parties filed cross-motions for summary judgment on all counts, and the District Court granted complete summary judgment for Defendants. Plaintiff now appeals the District Court's rulings for the Defendants on the following counts of their Amended Complaint:

**Count I:**   Violation of the First Amendment Right of Association, against Defendant Noblesville Schools (for revocation of club status);

**Count II:**   Violations of the First Amendment Right to Freedom of Speech, against Defendant Noblesville Schools (for revocation of club status and denial of flyers);

---

[2] Plaintiffs also filed suit against seven members of Noblesville Schools' administrative and teaching staff, most of which did not work at the high school, for various Facebook "likes" and comments related to NSFL. Plaintiffs do not appeal the District Court's summary judgment ruling on those claims.

**Count V:** Violations of First Amendment Right to be Free from Retaliation, against Noblesville Schools (for revocation of club status);

**Count VI:** Violations of First Amendment Right to be Free from Retaliation, against Niedermeyer and McCaffrey (individual capacity claims) (for revocation of club status);

**Count VII:** Violations of the Equal Access Act against Noblesville Schools, and McCaffrey, Mobley, and Luna (in their individual capacities) (for revocation of club status).

Doc. 98 at 39-41; Doc. 102; Doc. 43. Defendants agree with Plaintiffs' summary of the pertinent portions of the District Court's opinion.

## SUMMARY OF THE ARGUMENT

Plaintiffs' claims are based on two events that occurred with regard to E.D. and NSFL: First, E.D.'s proposed flyers for NSFL's call-out meeting were denied because they included political photographs. Second, NSFL was revoked from meeting at school for the remainder of the fall 2021 semester. For many reasons addressed herein, neither can form the basis for a First Amendment or Equal Access Act violation.

The District Court properly granted summary judgment in Defendants' favor on E.D. and NSFL's claims. Plaintiffs' First Amendment freedom of speech and freedom of association claims were asserted against the municipal entity, Noblesville Schools, only. Plaintiffs cannot succeed on these claims or on their First Amendment retaliation or Equal Access Act claims against Noblesville Schools, because the evidence does not demonstrate that a Noblesville Schools policy,

custom, or person with final policymaking authority caused the alleged deprivations.

To the extent a Noblesville Schools policy or custom caused the call-out meeting flyer to be denied, Noblesville Schools did not violate the First Amendment by refusing to allow students to hang flyers with political messaging on school walls. *Hazelwood School District v. Kuhlmeier* squarely applies to the issue of whether a school must lend its facility walls to student speech, and Plaintiffs' claims fail under the forum analysis described in *Kuhlmeier*. The walls were a non-public forum, and the rule that students could not hang political messages was both reasonable and viewpoint-neutral. The rule also did not violate any other First Amendment standard, including those related to prior restraints and unbridled discretion.

With regard to Plaintiffs' First Amendment retaliation claims, the District Court correctly found that Dr. McCaffrey temporarily revoked NSFL because he was concerned about adult involvement in NSFL and adult-assisted insubordination with regard to the call-out flyers—not because of any First Amendment protected activities. Regardless, Dr. McCaffrey is entitled to qualified immunity on Plaintiffs' claims, because Plaintiffs have not demonstrated that Dr. McCaffrey violated any rights guaranteed by firm precedent. Though Plaintiffs also attempt to renew their First Amendment retaliation claim against Dr. Niedermeyer, they waived that argument by failing to address it during summary judgment and have otherwise failed to present any evidence that Dr. Niedermeyer was personally involved in the decision to revoke NSFL.

Finally, Defendants did not violate the Equal Access Act. Plaintiff did not bring a Equal Access Act claim related to denial of E.D.'s proposed flyers, and the evidence demonstrates as a matter of undisputed fact that Dr. McCaffrey did not revoke NSFL due to the content of its speech at meetings.

## ARGUMENT

### I. Standard of Review

This Court reviews "*de novo* a district court's decision on cross-motions for summary judgment, construing all facts and drawing all reasonable inferences in favor of the party against whom the motion under consideration was filed." *Kemp v. Liebel*, 877 F.3d 346, 350 (7th Cir. 2017). "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.* (citing Fed R. Civ. P. 56(a)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

"A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but...must set forth specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted.) "[I]n the face of the defendant's properly supported motion for summary judgment, the plaintiff could not rest on his allegations [] to get to a jury without any significant probative evidence...." *Id.* at 248-49.

## II.     The District Court properly granted summary judgment for Noblesville Schools on Plaintiffs' First Amendment claims for alleged violations of the freedoms of speech and association, First Amendment retaliation, and alleged Equal Access Act violations.

Plaintiffs first challenge the District Court's ruling for the Defendants on Plaintiffs' claims that Defendants violated their First Amendment rights to freedom of speech and freedom of association. In doing so, Plaintiffs seek to create material facts in dispute where none exist. In the District Court, Defendants identified 46 material facts not in dispute, all supported by citation to admissible evidence in the record. Doc. 158, at 11-22. Plaintiffs accepted without comment 42 of those material facts. Doc. 164, at PageID # 2873 – 2874. The four facts that Plaintiffs attempted to dispute were not properly controverted with admissible evidence; nor shown to support a reasonable inference in Plaintiffs' favor. *Id*.

Throughout their brief Plaintiffs offer their characterization of the documented evidence and testimony. Such characterizations not disputed facts. On appeal, the Court must apply the controlling law to the properly designated material facts, supported by the evidence. The material facts found in the record at Doc. 158, PageID # 2505-2516 are controlling. The District Court properly found that application of the controlling law to those undisputed facts mandated judgment in favor of Defendants. Plaintiffs' argument urges this Court to ignore those established, undisputed facts, without any legal basis for doing so.

Also, in addressing their free speech and association claims, Plaintiffs fail to acknowledge that there is only *one* defendant to those claims: the municipal entity,

Noblesville Schools.[3] There are no individual-capacity defendants to Plaintiffs free speech and association claims. As such, those claims, as well as Plaintiffs claims for First Amendment retaliation and Equal Access Act violations,[4] must meet the requirements for claims against governmental entities set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and its progeny. Plaintiffs have not demonstrated that the alleged violations resulted from a policy, widespread

---

[3] Plaintiffs initially brought these claims against Noblesville Schools, Noblesville High School, "Niedermeyer in her official capacity," McCaffrey in his official capacity," "Mobley in her official capacity," and "Luna in his official capacity." Doc. 43 at 23, ¶ 232, and 25, ¶ 253]. On a motion to dismiss filed by Defendants, the District Court dismissed the official capacity claims as duplicative of Plaintiffs' claims against the school district.[3] Doc. 98 at 15-17. Additionally, Plaintiffs do not dispute during summary judgment briefing that Noblesville High School is not a suable entity separate from the school district, so the District Court dismissed all claims against Noblesville High School. Doc. 189 at 19, fn. 4.

[4] The Equal Access Act is enforceable by a private right of action under section 1983. Plaintiffs' Equal Access Act claim is therefore governed by section 1983 standards. *See, e.g., Carver Middle School Gay-Straight Alliance v. Sch. Bd. of Lake Cnty., Fla.*, 249 F. Supp. 3d 1286, 1290 (M.D. Fla. 2017) (holding that "42 U.S.C. § 1983 supplies a procedural mechanism or cause of action for litigating violations of the Equal Access Act").

custom, or person with final policy making authority under *Monell*. Even if the rule that flyers could not contain political content could be considered a Noblesville Schools policy or custom, the rule does not violate Plaintiff's First Amendment rights.

### a. The District Court correctly analyzed Plaintiffs' claims against Noblesville Schools under *Monell*.

Because Plaintiffs' free speech and free association claims are against Noblesville Schools, only, Plaintiffs "cannot prevail . . . by showing merely" that a school official, "acting within the scope of the official's employment and therefore under color of state law, deprived the plaintiffs" of their First Amendment rights. *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 468 (7th Cir. 2001). Rather, Plaintiffs "must show that the *district itself*, which is to say the officials or official boards that constitute the relevant final decisionmaking authority (legislative or executive) within the district, was *directly* responsible for the deprivation." *Id.* (emphasis added). Specifically, Plaintiffs must demonstrate that any constitutional violation was "properly attributable to the [public entity] itself" through Noblesville Schools' execution of a policy or custom or that it was caused by an individual with final policymaking authority for the school district. *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 824 (7th Cir. 2022) (internal quotations and citations omitted); *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008).

Plaintiffs made no attempt to show that Noblesville Schools had "either an express policy or a widespread practice or custom that caused NSFL's revocation."

Doc. 189 at 20. Rather, Plaintiffs argued only that Dr. McCaffrey was a person with final policymaking authority, which is incorrect under Indiana law.

### 1. Dr. McCaffrey is not a final policymaking authority for Noblesville Schools.

The final policymaking authority for a municipal entity is dictated by state and local law. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). As the District Court recognized, in Indiana, the final policymaker for a public school corporation is its board of school trustees. Doc. 189 at 20; *Harless by Harless v. Darr*, 937 F. Supp. 1339, 1349 (S.D. Ind. 1996) ("[T]he school board and not the [p]rincipal or the [s]uperintendent has final policy making authority under Indiana law.").

Plaintiffs argue Dr. McCaffrey had final policymaking authority for Noblesville Schools by citation to two Indiana statutes: First, Plaintiffs cite Indiana Code section 20-18-2-14, which defines "principal" as "the chief administrative officer of a school." This definition does not grant the principal final decision-making authority for a school *district*. Second, Plaintiffs cite section 20-33-8-10, located in the "Student Discipline" chapter of Indiana's Education Code and titled "Disciplinary powers of principals." Section (a) of the statute provides that the "principal may take action concerning the principal's school or a school activity within the principal's jurisdiction that is reasonably necessary to carry out or prevent interference with an educational function or school purposes," and section (b) states, "Subsection (a) allows a principal to write regulations that govern student conduct." App. Doc. 14 at 51. There is no evidence that this statute, relating to student discipline, was intended to make a school principal the final *policymaking* authority

for a school district. None of Plaintiffs' cited statutes have been relied on, by any court, to support such an assertion.

Even further, courts have explicitly held that the Indiana Code provisions cited by Plaintiffs do *not* establish a principal as the final policymaking authority for a school district. In *Oliver by Hines v. McClung*, 919 F. Supp. 1206, 1216 (N.D. Ind. 1995), the court addressed the language in Ind. Code section 20-33-8-10(a)[5] that a principal may take action concerning the principal's school or a school activity. The court found that while the statute may have given the school principal "broad discretion to make decisions regarding the operation of" his particular school, "nothing in [the statute] purports to grant him policy-making authority" for the school district. *Id. See also Harless by Harless v. Darr*, 937 F. Supp. 1339 (S.D. Ind. 1996) (while the provision "permits the Principal and Superintendent to make ad hoc decisions to maintain order within the school," "authority to make a final decision need not imply authority to establish rules") (internal quotation marks omitted).

Plaintiffs rely on the fact that an Indiana statute cited in *Harless* is now repealed. The repealed statute provided that "[a]ll rules, standards or policies adopted by anyone other than the governing body and applying to any group of students or to students generally, shall not be effective until they are reviewed and approved by the superintendent and until they shall be presented to the governing

---

[5] Then codified as Ind. Code section 20-8.1-5-2(b).

body." Ind. Code § 20-8.1-5-3. But this statute was not the only—or even the primary—basis for the court's decision. The court first and foremost relied on (still-existing) Indiana law that states "school boards have the authority to 'prepare, make, enforce, amend, or repeal rules, regulations, and procedures for the government and management of the . . . school corporation, its agents, employees and pupils.'" *Harless*, 937 F.Supp. at 1349 (citing Ind. Code § 20-5-2-2(17), *recodified as* § 20-26-5-4). Of note, even after I.C. § 20-8.1-5-3 was repealed, both federal and state courts in Indiana have held that final policymaking authority for a school corporation rests with the school board. *E.g., M.S.D. of Martinsville v. Jackson*, 9 N.E.3d 230, 240 (Ind. Ct. App. 2014) ("[L]anguage found in Indiana Code Article 20 indicates that a school principal's role is mostly administrative, while the responsibility for creating policy lies with the school board."); *Wesley v. S. Bend Cmty. Sch. Corp.*, No. 3:19-cv-00032, 2019 WL 5579159, at *7 (N.D. Ind. 2019). Dr. McCaffrey does not have final decision-making authority for Noblesville Schools under Indiana law.

### 2. Noblesville Schools did not delegate final policymaking authority over student clubs to Dr. McCaffrey.

Plaintiffs also argue Noblesville Schools delegated policymaking authority over NHS student clubs to Dr. McCaffrey. But "[u]nder the delegation theory, the person or entity with final policymaking authority must delegate the power to make *policy*, not simply the power to make *decisions*." *Darchak v. City of Chicago Bd. Of Educ.*, 580 F.3d 622, 630 (7th Cir. 2009) (emphasis added). As the District Court articulated, "Dr. McCaffrey's discretionary authority to make decisions regarding

student interest clubs at NHS does not render him the final decision maker regarding policies for purposes of § 1983 municipal liability." Doc. 189 at 21 (citing *Ball v. City of Indianapolis*, 760 F.3d 636, 643 (7th Cir. 2014); *Kristofek v. Village of Orland Hills*, 712 F.3d 979, 987 (7th Cir. 2013); and *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 469 (7th Cir. 2001)).

Dr. McCaffrey made decisions about how students should apply to form a student club in the same way that band directors decide how a student will apply to audition to play an instrument; coaches and athletic directors decide how students will try out to make a team; and teachers decide how students must execute a homework assignment to get an "A." These teachers and administrators may have certain rules or guidance in place to help students understand what is expected of them, but these rules do not constitute official policies of the school district. The fact that certain school district employees might have "unchecked authority" to set guidelines for day-to-day issues that arise in a school does not make them policymakers for the school district. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 130, 108 S. Ct. 915, 927, 99 L. Ed. 2d 107 (1988) ("Simply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy.").

Additionally, Plaintiffs go on to state that "both the district and Principal McCaffrey appropriately had authority to make policy regarding clubs." App. Doc. 14 at 53-54. While Noblesville Schools disagrees that Dr. McCaffrey had authority to make policy, it goes without saying that a school board's authority would trump

any purported policymaking decisions by a building principal. As Indiana law expressly provides, it is the school board that has the authority to "prepare, make, enforce, amend, or repeal rules, regulations, and procedures[.]" Ind. Code § 20-26-5-4(18). That Plaintiffs concede the School Board's authority contravenes their delegation theory. *See also Gernetzke*, 274 F.3d 464 at 469 (municipal liability under section 1983 is limited "to situations in which the official who commits the alleged violation of the plaintiff's rights has authority that is final in the special sense that there is no higher authority"). The undisputed evidence demonstrates that the Noblesville School Board—not Dr. McCaffrey—had final authority over NHS's policies, including through review and approval of NHS's Student Handbook. *Id.* at 22-23.

The student plaintiffs in *Gernetzke v. Kenosha Unified School Dist. No. 1*, 274 F.3d 464 (7th Cir. 2001), also pursued a delegation theory of *Monell* liability. In that case, members of the high school's Bible Club wanted to paint a mural in their school hallway depicting a bible passage and religious symbols, including a large cross. *Id.* at 466. The high school principal refused to allow inclusion of the large cross on the mural and did not allow one of the students to distribute religious literature schoolwide, leading the students to file suit against the school district under the First Amendment and Equal Access Act. *Id.* The students also sued the school superintendent and the high school principal, but only in their official capacities—thus "added nothing to the suit." *Id.* Plaintiffs appealed to this Court

after the district court granted summary judgment to the school district and its administrators. *Id.*

This Court began its analysis of the First Amendment claim by questioning why the students did not sue the individual defendants in their individual capacities, "where they would not face the *Monell* issue that . . . is fatal to the claim regardless of the claim's merits." *Id.* at 467. *Monell* was "fatal" to the students' claim, because no policy or custom caused the alleged deprivation, and the high school principal was not a final policymaker for the school district "so far as the mural and the request to be allowed to distribute literature are concerned." *Id.* at 469. This was true even though the school board had "promulgated regulations that delegate[d] the administration of the five high schools in the school district to the principal of each school." *Id.* at 468. According to the Court, if such delegation made the principal a final policy decisionmaker, "[i]t would collapse direct and derivative liability." *Id.* at 469. The same reasoning applies to Noblesville Schools' delegation to Dr. McCaffrey to make day-to-day decisions about student clubs at Noblesville High School.

**b. The rule at Noblesville High School that students were not permitted to hang flyers with political content on school walls did not violate Plaintiffs' First Amendment right to freedom of speech.[6]**

---

[6] Because Noblesville Schools is the only Defendant to Plaintiffs' free speech and free association claims, the District Court did not engage in any analysis of individual liability on the parts of Dr. McCaffrey, Ms. Mobley, or Mr. Luna as to

1. ***Hazelwood School District v. Kuhlmeier* is indistinguishable from this case and applies the appropriate standard for analyzing Plaintiffs' First Amendment free speech claim.**

Plaintiffs assert E.D. had a broad right to post political messages on her public school's walls without any prior approval from school administrators, as long as there was no evidence of substantial disruption under *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969). App. Doc. 14 at 23-26. But as the Supreme Court held in *Hazelwood School District v. Kuhlmeier*, the standard articulated in *Tinker* need not apply where a school is being asked to "lend its name and resources to the dissemination of student expression." 484 U.S. 260, 272-273 (1998) (emphasis added). E.D. wants Noblesville Schools to lend its facility—Noblesville High School—to promoting her political viewpoint. In other words, E.D. wants Noblesville Schools to "affirmatively promote" her speech rather than "tolerate" it—the exact scenario addressed by *Hazelwood*. *Id.* at 270-271. There are few better examples of an "expressive activit[y] that students, parents, and members of the public might reasonably perceive to bear the imprimatur of the school" than hanging messages on school walls that will stay there for several days or more, as opposed to "personal expression that happens to occur on the school premises." *Id.* at 271.

Of the cases Plaintiffs cite in opposition to *Kuhlmeier's* application, none involve a public school lending its own facility walls to promoting the speech of others.

those claims. Doc. 189 at 19-26. There is similarly no basis for this Court to perform any individual-liability analysis of these claims.

*Muller by Muller v. Jefferson Lighthouse School*, the case where Judge Rovner thought *Tinker* should apply, involved a fourth-grader who wanted to personally hand out school invitations to a religious group meeting during non-instructional times. 98 F.3d 1530, 1532 (7th Cir. 1996). *N.J. by Jacob v. Sonnabend* arose when two students were banned from wearing t-shirts displaying pro-gun logos. 37 F.4th 412, 416 (7th Cir. 2022). *Hedges v. Wauconda Cmty. Unit Sch. Dist. No. 118* originated with an eighth grader who was distributing a church publication outside her school before the start of the school day. 9 F.3d 1295, 1296 (7th Cir. 1993) (finding that "[l]imiting distribution [of religious literature] to a designated place is not an inappropriate rule, given the nature of the school and the principal's lawful control over pupils' behavior within.").

E.D. did not have a right to hang a political poster on her high school's walls. The school is not required to promote a student's preferred political message on the school walls unless the school has opened a public forum for doing so. Noblesville Schools must "retain the authority to refuse to sponsor student speech that might reasonably be perceived . . . to associate the school with any position other than neutrality on matters of political controversy." *Hazelwood*, 484 U.S. at 272.

### 2. Noblesville High School walls were a non-public forum.

The District Court properly applied a forum analysis to the issue of whether E.D. should have been permitted to hang the SFLA flyers. Where a forum for expression is not a "public forum" within the meaning of First Amendment jurisprudence, the government can place reasonable limits on speech. *See Minnesota Voters Alliance v. Mansky*, 585 U.S. 1, 11-12, 201 L. Ed. 2d 201, 138 S. Ct. 1876, 1885 (2018) (citing

*Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 46, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). Public school facilities are not considered public fora unless "school authorities have 'by policy or practice' opened those facilities 'for indiscriminate use by the public' or by some segment of the public, such as student organizations." *Hazelwood,* 484 U.S. at 267 (quoting *Perry Ed. Assn.*, 460 U.S. at 46, 47, n. 7). On the other hand, "if the facilities have instead been reserved for other intended purposes, 'communicative or otherwise,' then no public forum has been created, and school officials may impose reasonable restrictions on the speech of students, teachers, and other members of the school community." *Id.* (citing *Perry Ed. Assn.*, 460 U.S. at 46, n.7).

Here, Noblesville Schools specifically limited the information and materials that students could post on the walls of NHS. All flyers had to be approved by an administrator, and administrators reserved the walls for certain communicative purposes. For student organizations, the purpose was to notify students of call-out meetings with the name of the club and the date, time, and location of the meeting. The general public was not permitted to post flyers on school walls. "The government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse." *Cornelius v. NAACP Legal Defense & Educational Fund, Inc.*, 473 U.S. 788, 802, 105 S.Ct. 3439, 3449, 87 L.Ed.2d 567 (1985); *see also Perry Educ. Assn.*, 460 U.S. at 47 (school's internal mail system was not a public forum where it was not open to the general public). Plaintiff has not identified any approved flyers that

go farther than informing students of the existence of a club, relevant date/time information, and a basic description of the club. Permitting these flyers to be hung on the walls does not obligate Noblesville Schools to open its walls to the entire gamut of political messaging. Mrs. Mobley explained the distinction during her deposition:

> Q. So my question is, is the rule that a flyer cannot have anything political in nature, or that it can't take a political stance, I guess?
>
> A. I would say both.
>
> Q. Neither is allowed.
>
> A. Correct.
>
> Q. Okay. Isn't like the Young Republicans political in nature? Like, you know, they take a stance on—
>
> A. Well, that is the name of their club.
>
> Q. So that makes it allowed.
>
> A. Well, I say in [the email to E.D.], the club can be listed, but they don't post or display items for the Republican party.
>
> Q. Okay. Can you explain what you mean by like "items"?
>
> A. They're not posting signage that say "Vote for Trump" or "Build that wall" or "Let's go, Brandon." They're not putting any pictures or signage up; they're putting "Noblesville Young Republicans."

Doc. 158-22 at 20-21 (Mobley Dep., 61:18-62:12). The undisputed evidence shows the walls of Noblesville High School was a non-public forum.

### 3. The rule regarding student club flyers was reasonable and viewpoint neutral.

The government's restriction on speech in a non-public forum need only be shown to be reasonable and viewpoint neutral. *John K. MacIver Inst. for Pub.*

*Policy*, 994 F.3d 602, 609 (7th Cir. 2021) ("The government, like other private property holders, can reserve property for the use for which it was intended, 'as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view.'"); *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985) ("Control over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral."). Specifically, educators may exercise control over school-sponsored expressive activities so long as their actions are "reasonably related to legitimate pedagogical concerns." *Hazelwood*, 484 U.S. at 273; *see also Muller by Muller v. Jefferson Lighthouse Sch.*, 98 F.3d 1530, 1540 (7th Cir. 1996), *overruled on other grounds by N.J. by Jacob v. Sonnabend*, 37 F.4th 412 (7th Cir. 2022) ("Prior restraint of student speech in a nonpublic forum is constitutional if reasonable."). It is only when a school's restriction on expression in a non-public forum "has no valid educational purpose" that the First Amendment is directly implicated. *Id.* at 273. The evidence shows Noblesville Schools had a valid educational purpose for refusing to permit political content in flyers, including to avoid becoming a facilitator of warring political messages that could disrupt the learning environment. *See Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 467 (7th Cir. 2001) ("Order and discipline are part of any high school's basic educational mission; without them, there is no education.").

While the words "Noblesville Students for Life" would have simply informed students and others that such a club exists, the words "Defund Planned Parenthood" reflect a specific stance on a political controversy. When members of the public enter a school facility for sporting events, theater or musical performances, parent-teacher conferences, or any other reason, they could erroneously attribute political messaging on a flyer to the school district or the school itself. The U.S. Supreme Court specifically held that a school "must [] retain the authority to refuse to . . . associate the school with any position other than neutrality on matters of political controversy." *Id.* at 272.

The rule regarding student flyers was also viewpoint neutral. Plaintiffs selectively quote Dr. McCaffrey's testimony about feminism in attempt to support their position that there was viewpoint discrimination, but there is no evidence Dr. McCaffrey or any other Noblesville Schools employee allowed a pro-feminism club to post flyers advocating for any political viewpoint. The rules that a student club flyer must have the club name and time, date, and location of the meeting, and no political messages, was applied equally to all student clubs. As the District Court acknowledged, "No administrator ever told E.D. that she was prohibited altogether from advertising NSFL's call-out meeting, that her flyer would be rejected even if she removed the politically-charged photograph, or that she would be restricted in some way from speaking freely on the topics of her choice at NSFL's meetings." Doc. 189 at 38. E.D. and NSFL had the same rights as all other student interest clubs, regardless of viewpoint.

### 4. The rule regarding student club flyers did not give administrators unbridled discretion.

First Amendment law does not require Noblesville Schools to craft detailed policies limiting administrators' discretion to determine what flyers might be appropriate to hang on the walls of a high school. The concept of unbridled discretion primarily applies in public forums, and although the Seventh Circuit has suggested the standard against unbridled discretion might apply in non-public forums, "this does not mean . . . that the same requirements apply in every instance in which the government restricts access to its property." *Wisconsin Interscholastic Athletic Ass'n v. Gannett Co.*, 716 F. Supp. 2d 773, 798 (W.D. Wis. 2010), *aff'd on other grounds*, 658 F.3d 614 (7th Cir. 2011) (citing *Child Evangelism Fellowship of MD, Inc. v. Montgomery County Public Schools*, 457 F.3d 376, 386 (4th Cir.2006)). The "key question" where the forum is not public is "whether there is an appreciable risk that the lack of more specific standards will lead to the censorship of a particular viewpoint." *Id.* "When 'there is no serious concern about either notice or chilling effects,' more specific standards are not required." *Id.* (quoting *Ridley v. Massachusetts Bay Transp. Auth.*, 390 F.3d 65, 94 (1st Cir. 2004)). As established above, Noblesville Schools' hallways were not a public forum. Thus, the Court need not apply the unbridled discretion doctrine "mechanically . . . without inquiry into the characteristics of the relevant forum." *Griffin v. Sec'y of Veterans Affairs*, 288 F.3d 1309, 1323 (Fed. Cir. 2002).

Here, school administrators had very little discretion in what they could permit on a student flyer that would be hung on school walls. As Ms. Mobley, Mr.

McCauley, and Mr. Luna's consistent guidance to E.D. all demonstrate, student club flyers were to include the club name and time, date, and location of the club meeting or event. This left no room for administrators to make decisions about what they might have deemed appropriate. E.D.'s proposed poster was "inappropriate" because it contained more than was permitted under the rules about what could be on a student club flyer, not because any administrator made an arbitrary decision about the content of the flyer.

Of course, the doctrine of unbridled discretion does not stand alone—it is a component of First Amendment viewpoint discrimination analysis. The purpose of the doctrine is to ensure government officials cannot encourage some views and discourage others through arbitrary application of laws and policies. *See Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123, 133, 112 S. Ct. 2395, 2403, 120 L. Ed. 2d 101 (1992). Plaintiffs have offered no evidence of viewpoint censorship at Noblesville Schools. Rather, the undisputed evidence shows that Noblesville Schools has permitted pro-life, conservative, and religious student organizations—including NSFL—to form and carry on club activities without issue. As discussed above, there is no evidence Noblesville Schools has ever taken a viewpoint-based approach regarding student club flyers.

### 5. Strict scrutiny does not apply.

Plaintiffs assert strict scrutiny—in addition to or as part of the *Tinker* standard—is the appropriate standard for evaluating whether Plaintiffs' rights were violated when E.D. was not permitted to hang her proposed flyers for NSFL.

Although the *Tinker* standard might be considered "heightened" in relation to rational basis review, there is no support for the application of strict scrutiny to this case. Although content-based regulations typically call for strict scrutiny analysis in traditional public forums—that is, "places which by long tradition or by government fiat have been devoted to assembly and debate"—nonpublic forums are not governed by the same standard. *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 46, 103 S. Ct. 948, 955, 74 L. Ed. 2d 794 (1983). "[T]he state may reserve [a nonpublic] forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Id.* Plaintiffs have previously conceded that the Noblesville High School hallways are a limited public—i.e., nonpublic—forum. Doc. 164 at 24-25; see *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 783 n.3 (7th Cir. 2011) ("A limited public forum (sometimes called a 'nonpublic forum') is a place the government has opened only for specific purposes or subjects; speech restrictions in a limited public forum need only be viewpoint-neutral and reasonable in light of the purposes served by the forum."). The limited public forum here could prohibit all political messages, including Plaintiffs' signs.

## III. The District Court correctly found no First Amendment retaliation related to NSFL revocation.

Plaintiffs argue that the district court should have found Dr. McCaffrey and Dr. Niedermeyer impermissibly retaliated against Plaintiffs for their protected speech in starting NSFL and attempting to hang flyers to spread the word about NSFL's

call-out meeting. Critically, Plaintiffs do not cite any evidence that would create a genuine dispute regarding Dr. McCaffrey's reasoning behind temporarily revoking NSFL, which was unrelated to the content of NSFL's speech. Plaintiffs cannot prove the causation element of their First Amendment retaliation claim. Regarding Dr. Niedermeyer, Plaintiffs failed to address alleged First Amendment retaliation by Dr. Niedermeyer during the summary judgment briefing and should not be able to revive that claim now.

### a. The undisputed evidence demonstrates Dr. McCaffrey temporarily revoked NSFL due to factors unrelated to the content of NSFL's or E.D.'s speech.

A First Amendment retaliation claim requires Plaintiffs to show: (1) they engaged in activity protected by the First Amendment; (2) they suffered a deprivation that would likely deter future First Amendment activity; and (3) the First Amendment activity was "at least a motivating factor" in Defendants' decision to take retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). Plaintiffs cannot prevail on their retaliation claim against Dr. McCaffrey in his individual capacity, or against Noblesville Schools on the theory that Dr. McCaffrey was a final policymaker, because they cannot establish that their protected activity was a motivating factor in Dr. McCaffrey's revocation decision. Rather, the undisputed evidence demonstrates that Dr. McCaffrey revoked NSFL because Ms. Duell's presence at two club-related meetings made him concerned the club was not student-run, and because E.D., along with her mother, had attempted an end-run

around Ms. Mobley and Mr. McCauley's "clear and consistent" instructions on how to create a permissible flyer. Doc. 189 at 28-34.

Plaintiffs' characterization of Dr. McCaffrey's reasons for temporarily revoking NSFL's approval as "threadbare" relies on the omission of numerous material, undisputed facts. For instance, Plaintiffs omit that E.D. received *three* emails—*before* her and Mrs. Duell's meeting with Mr. Luna—with specific instructions for creating permissible call-out flyers[7]; that in response to one of these emails, she expressly told Mr. McCauley she had hoped to use the SFLA template flyers that had already been denied; and that after the third email she received with the exact information she needed to put on the flyers, she indicated understanding by responding, "Sounds good, thanks! I'll get to work on making the flyers." E.D. also had express instructions from both Ms. Mobley and Mr. McCauley to send drafts of the flyers to Mr. McCauley for approval. There is no genuine dispute of the facts

---

[7] Plaintiffs cite as "evidence" of retaliation that Ms. Mobley's email to E.D. made no reference to the flyers as "political" and merely told E.D. she did not "need the pictures." While Ms. Mobley's email did not contain the word "political," the email did state: "We do not need the pictures *of the signage*. For example, our Young Republican's club does not display items for the Republican party. Their flyers just simply state the club name and meeting/call-out information. Then obviously at the club meeting and call-out, you guys can discuss whatever is your topic at hand." Doc. 158-5 at 4. (Emphasis added).

that E.D. had clear instructions for how to create acceptable flyers; that E.D. understood these instructions, or at least indicated understanding; and that E.D. defied all of Ms. Mobley's and Mr. McCauley's instructions and, along with her mother, presented the flyers to a different administrator.

The evidence demonstrates that Dr. McCaffrey's reasoning for revoking NSFL was unrelated to the content of the club's speech. At the meeting between Dr. McCaffrey, Ms. Mobley, and Mr. Luna, the administrators discussed that (1) E.D.'s proposed flyer had already been denied by Ms. Mobley and that there was already a plan in place to correct it before she showed the flyer to Mr. Luna, and (2) Mrs. Duell's involvement was concerning. Doc. 158-20 at 18 (McCaffrey Dep. I, 103:2-14); Doc. 158-22 at 8 (Mobley Dep. I, 35:5-15); Doc. 158-23 at 15 (Luna Dep. I, 46:2-17). After sending the revocation email to E.D.'s mother, Dr. McCaffrey called Dr. Niedermeyer to explain the situation. Dr. McCaffrey and Dr. Niedermeyer both described this conversation as focusing on concerns over Mrs. Duell's involvement:

> **Dr. McCaffrey:** I just called and told her what happened and what I was going to do as far as not let the club start in August, and they could reapply in January and the reason why. And I referred our situation to her, the situation we had with CRU my first year and being contacted by the Freedom from Religion Foundation,[8] and I said, "I don't want to get into another one of those situations, so we need to make sure we're showing that we're following what we were told to do by our attorneys

---

[8] Of note, the Equal Access Act provides that for a school to comply with the Act, "nonschool persons may not direct, conduct, control, or regularly attend activities of student groups." 20 U.S.C. § 4071.

[after the CRU situation], and so we're going to hit reset and let them
start in January.

Doc. 158-21 at 8 (McCaffrey Dep. II, 128:4-16).

> **Dr. Niedermeyer:** [Dr. McCaffrey] was [e]xplaining that he was
> concerned with the mother's involvement. He felt that she was too
> involved and that he had not seen that level of involvement from a
> parent before, and it caused him pause; therefore, he wanted to
> temporarily suspend the club's status to allow the student time to maybe
> regroup and reapply in January.

Doc. 165-1 at 4 (Niedermeyer Dep., 41:2-9). There is no evidence to genuinely

dispute Dr. McCaffrey's testimony or the testimony by multiple individual

Defendants in this matter. Dr. McCaffrey's decision to temporarily revoke NSFL

was not due to Plaintiffs' protected speech.

### b. Dr. McCaffrey is entitled to qualified immunity.

In section 1983 cases against government actors in their individual capacities,

qualified immunity gives those individuals "breathing room to make reasonable but

mistaken judgments, and protects all but the plainly incompetent or those who

knowingly violate the law." *See Messerschmidt v. Millender*, 565 U.S. 535, 546, 132

S. Ct. 1235, 1244, 182 L. Ed. 2d 47 (2012) (quotations omitted). Qualified immunity

requires dismissal of a plaintiff's claim for civil rights violations unless: (1) the

plaintiff "come[s] forward with facts that, when viewed in a light most favorable to

him, constitute a violation of a federal constitutional right, and (2) the right was

'clearly established' at the time of the alleged violation." *Siddique v. Laliberte*, 972

F.3d 898, 903 (7th Cir. 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102

S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Plaintiffs bear the burden of demonstrating a

clearly established right through firm precedent, particularized to the facts of the

case, that places the question beyond debate. *Id.* (citations omitted). The right must be defined "carefully, and at the right level of detail," rather than generally. *Id.* (citing *Frederickson v. Landeros*, 943 F.3d 1054, 1059 (7th Cir. 2019).

There is no existing precedent, let alone "firm" precedent, establishing that E.D. and NSFL had a right against the temporary revocation of NSFL based on concern over adult involvement and insubordination, nor that Plaintiffs had a right to hang political flyers on school walls. Dr. McCaffrey—and all other individual Defendants, to the extent that any of their conduct might be considered to cause individual liability in this case—are entitled to qualified immunity.

### c. Plaintiffs waived any argument that Dr. Niedermeyer is responsible for First Amendment retaliation by abandoning all related argument during summary judgment briefing.

Plaintiffs briefly assert that Noblesville Schools Superintendent Dr. Beth Niedermeyer had personal involvement in the revocation of NSFL by acquiescing in Dr. McCaffrey's decision and, therefore, is individually responsible for First Amendment retaliation. Yet, Plaintiffs never argued this point in their summary judgment briefing, even in response to Defendants' argument on point. Doc. 158 at 34-35. Plaintiffs, therefore, waived any argument that Dr. Niedermeyer is responsible for First Amendment retaliation. *See Nichols v. Michigan City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment."); *Ennin v. CNH Indus. Am., LLC*, 878 F.3d 590, 595 (7th Cir. 2017) ("Failure to respond to an argument generally results in waiver, and failure to

present an argument to the District Court usually means [the court] will not address it on appeal.").

Even if Plaintiffs did not waive this issue, there is no evidence Dr. Niedermeyer was personally involved in the decision to revoke NSFL's club status. "A defendant will not be liable for a constitutional violation under § 1983 if the defendant merely exercised supervisory authority over those who violated the plaintiff's rights and otherwise failed to participate in any violation of the plaintiff's rights." *Kelly v. Mun. Cts. of Marion Cnty., Ind.*, 97 F.3d 902, 909 (7th Cir. 1996). Plaintiffs allege and the evidence shows, at most, that Dr. McCaffrey informed Dr. Niedermeyer—his supervisor—of NSFL's revocation after the fact. The temporary revocation of NSFL did not violate Plaintiffs' constitutional rights, but even if it did, there is no evidence Dr. Niedermeyer was personally involved.

## IV. Defendants did not violate the Equal Access Act.

Under the Equal Access Act, schools that receive Federal financial assistance and have a limited open forum may not "deny equal access or a fair opportunity to, or discriminate against, any students who wish to conduct a meeting within that limited open forum on the basis of the religious, political, philosophical, or other content of the speech at such meetings." 20 U.S.C. § 4071(a). There has been no violation of the Equal Access Act, because Plaintiffs were not denied access to Noblesville Schools' limited open forum for school clubs because of the content of NSFL's speech.

### a. Plaintiffs did not bring a claim under the Equal Access Act related to denial of the NSFL flyers and Plaintiffs cannot add that claim on appeal.

Plaintiffs argue the Defendants violated the Act by denying approval of the SFLA flyers. But Plaintiffs' Amended Complaint does not contain any claims under the Equal Access Act related to denial of the flyers. Doc. 43 at 35-37 (alleging only that "NHS's revocation of NSFL's student organization status violates the EAA"). In the words of the District Court, "Plaintiffs are prohibited from raising a new theory of liability under the Equal Access Act for the first time on summary judgment." Doc. 189 at 43, fn. 9.

Plaintiffs argue a new theory in an attempt to add this claim on appeal: that the Act's definition of "meeting" includes advertising via flyers in school hallways. App. Doc. 14 at 46-47. Not only did Plaintiffs fail to bring any Equal Access Act claim related to the flyers, but Plaintiffs did not make any argument related to the definition of "meeting" for the District Court to consider during summary judgment briefing. Although the Court's review of the District Court's decision to grant summary judgment is *de novo*, "parties cannot conjure up brand new legal theories on appeal[.]" *Wheeler v. Hronopoulos*, 891 F.3d 1072, 1073 (7th Cir. 2018).

In any case, the undisputed evidence shows E.D. and NSFL were permitted to hang flyers to advertise their call-out meeting, just like any other club, and were subject to the same rules as all other clubs. Plaintiffs have not been deprived of "equal access or a fair opportunity" under the Act. *See* 20 U.S.C. § 4071(a).

### b. Dr. McCaffrey did not violate the Equal Access Act when he temporarily revoked NSFL's approval, and no other individual Defendant was personally involved in the revocation.

Plaintiffs cursorily, if at all, address their Equal Access Act claim related to NSFL revocation. App. Doc. 14 at 46 (Stating only that "Defendant McCaffrey revoked and Defendant Niedermeyer acquiesced in revoking group recognition based on those 'political' flyers," with no further development of this argument.). Plaintiffs offer no reason why the District Court's decision on this claim should be reversed. Regardless, as addressed *supra* regarding Plaintiffs' retaliation claim, there is no evidence that Dr. McCaffrey revoked NSFL on the basis of the group's speech at meetings or on the content of the proposed flyers. Rather, Dr. McCaffrey was concerned with parent-assisted insubordination and that Mrs. Duell's involvement in NSFL could expose the school to legal liability in the wake of the 2019 CRU situation. These are permissible reasons for club revocation under the Equal Access Act, which provides that "[n]othing in [the Act] shall be construed to limit the authority of the school . . . to maintain order and discipline on school premises." 20 U.S.C. § 4071(f). *See Gernetzke*, 274 F.3d at 466 (holding a principal who denied a student club's request to paint a large cross on a school mural because he feared "it might invite a lawsuit and incite ugly conflicts among the students" was "insulated from liability" under 20 U.S.C. § 4071(f)) (internal citation omitted). Dr. McCaffrey is also entitled to qualified immunity for this claim for the same reasons addressed *supra* with respect to First Amendment retaliation.

As the District Court held, individual Defendants Ms. Mobley and Mr. Luna were not personally involved in NSFL's revocation and, thus, are not liable under

Plaintiffs' Equal Access Claim Act. Plaintiffs offer no reason for the Court to revisit this holding.

## CONCLUSION

For the reasons stated, the Court should affirm the District Court's grant of summary judgment in Defendants' favor on all of Plaintiffs' claims. At minimum, and for the same reasons, Plaintiffs are not entitled to reversal of the district court's opinion in their favor on any count of their Amended Complaint.

## CERTIFICATE OF COMPLIANCE WITH
## FRAP RULE 32(a)(7), FRAP RULE 32(g) and CR 32(c)

The undersigned, counsel of record for the Defendants, furnishes the following in compliance with F.R.A.P. Rule 32(a)(7):

I hereby certify that this brief conforms to the rules contained in F.R.A.P. Rule 32(a)(7) for a brief produced with a proportionally spaced font. The length of this brief is 11,845 words.

Dated July 5, 2024.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 5, 2024, a true and exact copy of the foregoing

was filed electronically with the Clerk of the United States Court of Appeals for the

Seventh Circuit using the Appellate CM/ECF system. Notice of this filing was sent

to the following persons by electronic service through the Court's CM/ECF system:

Zachary S. Kester
zkester@charitableallies.org
L. Katie Buckner
kbuckner@charitableallies.org
Spencer E. Rehn
srehn@charitableallies.org
CHARTABLE ALLIES, INC.
9100 Purdue Road, Suite 115
Indianapolis, IN 46268

Mathew W. Hoffman
mhoffman@adflegal.com
Tyson C. Langhofer
tlanghofer@adflegal.org
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, VA 20176

John J. Bursch
jbursch@adflegal.org
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001