No. 24-1608

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

E.D., a minor by and through her parents and next friends MICHAEL DU-
ELL and LISA DUELL; NOBLESVILLE STUDENTS FOR LIFE,

*Plaintiffs-Appellants,*

v.

NOBLESVILLE SCHOOL DISTRICT, et al.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of Indiana
Case No. 1:21-cv-03075-SEB-TAB

# REPLY BRIEF OF APPELLANTS

John J. Bursch
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(616) 450-4235
jbursch@adflegal.org

Zachary S. Kester
L. Katie Buckner
Spencer E. Rehn
CHARITABLE ALLIES, INC.
3500 Depauw Blvd., Suite 3090
Indianapolis, IN 46268
(463) 229-0229
zkester@charitableallies.org
kbuckner@charitableallies.org
srehn@charitableallies.org

Tyson C. Langhofer
Mathew W. Hoffmann
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, VA 20176
(571) 707-4655
tlanghofer@adflegal.org
mhoffmann@adflegal.org

*Counsel for Appellants*

# TABLE OF CONTENTS

Table of Authorities.................................................................... iii

Introduction................................................................................1

Argument...................................................................................2

I. Defendants violated the First Amendment. ...................................3

    A. Defendants' enforcement of their *Prior Restraint Policy* and *Censorship Custom* abridged free-speech rights (Count II). ..................................................................3

        1. *Hazelwood* doesn't apply................................................3

        2. Defendants' enforcement of their *Censorship Custom* fails even under *Hazelwood*..............................6

    B. Defendants' revocation fails limited public forum scrutiny and violates associational rights (Counts I and II). ..................................................................9

    C. Defendants retaliated against E.D.'s pro-life flyers by revoking registration (Counts V and VI). ...........................10

        1. E.D.'s "political" flyers motivated Principal McCaffrey's revocation decision...................................11

        2. Superintendent Niedermeyer acquiesced in Principal McCaffrey's retaliation. ...............................14

        3. Qualified immunity doesn't protect Defendants. ........15

            a. Defendants' retaliation violates clearly established law.....................................15

            b. This Court (and the Supreme Court) should reconsider how qualified immunity applies here.................................................19

i

II.    Defendants violated clearly established Equal Access Act rights (Count VII)..............................................................20

III.   Noblesville Schools cannot escape liability under *Monell*.............23

    A.    Noblesville Schools had a policy and custom and practice prohibiting E.D. from displaying "political" posters (Counts II and VII)..................................24

    B.    Indiana law and the record establish Principal McCaffrey as a final policymaker (Counts I, II, V, and VII)....................................................................24

Conclusion ..........................................................................29

Certificate of Compliance....................................................31

Certificate of Service ..........................................................32

# TABLE OF AUTHORITIES

## Cases

*AAR International, Inc. v. Nimelias Enterprises S.A.*,
250 F.3d 510 (7th Cir. 2001) ........................................................ 10

*Board of Education v. Mergens ex rel. Mergens*,
496 U.S. 226 (1990) .................................................................... 22

*Bowler v. Town of Hudson*,
514 F. Supp. 2d 168 (D. Mass. 2007) ....................................... 5, 23

*Burgess v. Lowery*,
201 F.3d 942 (7th Cir. 2000) ...................................................... 15

*Citizens United v. Federal Election Commission*,
558 U.S. 310 (2010) .................................................................... 14

*Cornfield by Lewis v. Consolidated High School District No. 230*,
991 F.2d 1316 (7th Cir. 1993) ................................................ 25, 28

*Crawford-El v. Britton*,
523 U.S. 574 (1998) .................................................................... 15

*Estate of Clark v. Walker*,
865 F.3d 544 (7th Cir. 2017) ...................................................... 15

*Fujishima v. Board of Education*,
460 F.2d 1355 (7th Cir. 1972) ............................... 7–8, 15–16

*Gazarkiewicz v. Town of Kingsford Heights*,
359 F.3d 933 (7th Cir. 2004) ...................................................... 13

*Gernetzke v. Kenosha Unified School District No. 1*,
274 F.3d 464 (7th Cir. 2001) ...................................................... 28

*Gold v. Wilson County School Board of Education*,
632 F. Supp. 2d 771 (M.D. Tenn. 2009) .................................... 5

*Gupta v. Melloh*,
19 F.4th 990 (7th Cir. 2021) ...................................................... 19

*Harless by Harless v. Darr,*
    937 F. Supp. 1339 (S.D. Ind. 1996) ................................................. 26

*Hazelwood School District v. Kuhlmeier,*
    484 U.S. 260 (1988) ........................................................................ 4

*Hedges v. Wauconda Community Unit School District No. 118,*
    9 F.3d 1295 (7th Cir. 1993) ..................................................... 15–18

*Herndon v. South Bend School Corp.,*
    2016 WL 3654501 (N.D. Ind. July 8, 2016) ................................... 26

*Hoggard v. Rhodes,*
    141 S. Ct. 2421 (2021) ................................................................... 20

*Intervarsity Christian Fellowship/USA v. University of Iowa,*
    5 F.4th 855 (8th Cir. 2021) ............................................................ 20

*Jones v. City of Chicago,*
    856 F.2d 985 (7th Cir. 1988) ......................................................... 14

*M.S.D. of Martinsville v. Jackson,*
    9 N.E.3d 230 (Ind. Ct. App. 2014) ................................................ 26

*Mahanoy Area School District v. B.L. ex rel. Levy,*
    594 U.S. 180 (2021) ........................................................................ 8

*Monell v. Department of Social Services,*
    436 U.S. 658 (1978) ................................................................. 7, 27

*Muller by Muller v. Jefferson Lighthouse School,*
    98 F.3d 1530 (7th Cir. 1996) ................................................. 4, 7, 17

*N.J. by Jacob v. Sonnabend,*
    37 F.4th 412 (7th Cir. 2022) ................................... 2–3, 6–7, 9, 17

*Nuxoll ex rel. Nuxoll v. Indian Prairie School District #204,*
    523 F.3d 668 (7th Cir. 2008) ......................................................... 17

*Oliver by Hines v. McClung,*
    919 F. Supp. 1206 (N.D. Ind. 1995) .............................................. 25

*Owen v. City of Independence,*
     445 U.S. 622 (1980) ...................................................................... 15

*Pendleton Heights Gay-Straight Alliance v. South Madison*
     *Community School Corporation,*
     577 F. Supp. 3d 927 (S.D. Ind. 2021) ............................................ 23

*Prince v. Jacoby,*
     303 F.3d 1074 (9th Cir. 2002) ................................................ 21, 23

*Riseman v. School Committee,*
     439 F.2d 148 (1st Cir. 1971) .......................................................... 16

*Robbins v. Wilkie,*
     433 F.3d 755 (10th Cir. 2006) ....................................................... 22

*Robbins v. Wilkie,*
     497 F.3d 1122 (10th Cir. 2007) ..................................................... 22

*Shuttlesworth v. City of Birmingham,*
     394 U.S. 147 (1969) ........................................................................ 8

*Surita v. Hyde,*
     665 F.3d 860 (7th Cir. 2011) ......................................................... 11

*Taylor v. Roswell Independent School District,*
     713 F.3d 25 (10th Cir. 2013) ......................................................... 17

*Tinker v. Des Moines Independent Community School District,*
     393 U.S. 503 (1969) ....................................................................... 16

*Torry v. City of Chicago,*
     932 F.3d 579 (7th Cir. 2019) ........................................................... 2

*Tyler v. City of Kingston,*
     74 F.4th 57 (2d Cir. 2023) ............................................................. 10

*United States v. Lanier,*
     520 U.S. 259 (1997) ....................................................................... 22

*Valentino v. Village of South Chicago Heights,*
     575 F.3d. 664 (7th Cir. 2009) ....................................................... 25

*Wesley v. South Bend Community School Corp.*,
    2019 WL 5579159 (N.D. Ind. Oct. 29, 2019) .................................. 26

*Zall v. Standard Insurance Company*,
    58 F.4th 284 (7th Cir. 2023) ........................................................... 22

*Ziglar v. Abbasi*,
    582 U.S. 120 (2017) ....................................................................... 20

*Zook v. Brown*,
    748 F.2d 1161 (7th Cir. 1984) ......................................................... 2

## Statutes

20 U.S.C. § 4071 ................................................................................ 21

Ind. Code § 20-18-2-14 ...................................................................... 25

## Other Authorities

Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*,
    111 CAL. L. REV. 201 (2023) ........................................................... 19

# INTRODUCTION

To bring together like-minded students for her student club promoting the protection of unborn babies, E.D. wanted to post flyers she created. Defendant Noblesville Schools required her to seek advance administrative approval under its *Prior Restraint Policy*. So that's what E.D. did. But her pro-life posters ran afoul of the district's subjective *Censorship Custom*, which prohibited flyers that Defendants, in their sole discretion, deemed "political" and not "appropriate." Beyond simply denying E.D.'s request to post the flyer, Defendant Principal McCaffrey revoked her club's recognition entirely, citing (in his view) the flyers' "political" and "not appropriate" "content." Doc. 158-3.

All that violates clearly established First Amendment and Equal Access Act law. A student-created flyer advertising a student club meeting not sponsored by the school cannot "bear the" school's "imprimatur." *Contra* Answering Br. 33. Under any rule, schools cannot categorically ban "political" speech or discriminate based on viewpoint. *Contra id.* at 34–38, 47–49. The evidence shows E.D.'s pro-life speech motivated Principal McCaffrey's revocation decision. *Contra id.* at 42–45. And because Principal McCaffrey served as chief administrative officer of the high school and could independently write regulations governing student conduct, he made final policy for Noblesville Schools. *Contra id.* at 24–32.

In sum, the facts entitle E.D. to summary judgment as to liability. And the facts Defendants now dispute prevent summary judgment in their favor. This Court should reverse.

## ARGUMENT

On appeal "from a decision on cross-motions for summary judgment," this Court "review[s] the evidence and draw[s] all reasonable inferences in favor of the party against whom the motion under consideration was made." *N.J. by Jacob v. Sonnabend*, 37 F.4th 412, 420 (7th Cir. 2022) (cleaned up). Defendants prefer that this Court look only to their proffered facts. Answering Br. 24. But on "cross-motions for summary judgment, the court must consider each party's evidence, regardless under which motion the evidence is offered." *Torry v. City of Chicago*, 932 F.3d 579, 584 (7th Cir. 2019) (Barrett, J.).

The district court properly did not limit its analysis to Defendants' preferred facts. Moreover, the undisputed facts show that E.D. is entitled to summary judgment. But "there are issues of material fact sufficient to prevent the entry of judgment as a matter of law against" E.D. *Zook v. Brown*, 748 F.2d 1161, 1166 (7th Cir. 1984).

## I.    Defendants violated the First Amendment.

Both clearly established law and the facts show Defendants violated the First Amendment. Defendants maintain that a student flyer bearing the name of the student group and advertising a student-led club meeting is Noblesville Schools' speech, not the student's. Answering Br. 33–34. They similarly dispute that E.D.'s pro-life flyer motivated Principal McCaffrey's revocation decision. *Id.* at 42–43. The facts show otherwise, and Defendants' factual disputes further demonstrate why the district court erred in granting summary judgment. Finally, Defendants waived opposition to E.D.'s limited public forum and free-association arguments by offering no substantive response.

### A.    Defendants' enforcement of their *Prior Restraint Policy* and *Censorship Custom* abridged free-speech rights (Count II).

As this Court has held, *Hazelwood* doesn't apply to student flyers. *N.J.*, 37 F.4th at 424–25. But Defendants' viewpoint discrimination and ban of all political speech flunks even that standard.

#### 1.    *Hazelwood* doesn't apply.

Defendants' attempt to hammer the square peg of a student-group flyer into *Hazelwood*'s round hole fares no better on appeal. They ignore three key limitations on *Hazelwood*'s reach. First, *Hazelwood* "involved a school-sponsored newspaper—'part of the educational curriculum' and a 'regular classroom activity.'" Opening Br. 23 (quoting *Hazelwood Sch.*

*Dist. v. Kuhlmeier*, 484 U.S. 260, 268 (1988)). Second, "[s]chool officials 'selected the editors of the newspaper, scheduled publication dates, decided the number of pages for each issue, assigned story ideas to class members, advised students on the development of their stories, reviewed the use of quotations, edited stories, selected and edited the letters to the editor, and dealt with the printing company'—largely 'without consultation' with the students." *Id.* (quoting *Hazelwood*, 484 U.S. at 268). None of the above applied to E.D.'s flyers here. *See* CatholicVote.org Education Fund Amicus Br. 8–11. Third, this Court has held that *Hazelwood* doesn't apply to flyers distributed and displayed by students. Opening Br. 24.

Defendants next attempt to draw an illusory distinction between "hang[ing] a political poster" on school walls and distributing flyers "during non-instructional times." Answering Br. 34. But that fact is irrelevant for the *Hazelwood* analysis. *Hazelwood* doesn't apply to flyers originating "with the students themselves, outside the purview of any school-sponsored activity." *Muller by Muller v. Jefferson Lighthouse Sch.*, 98 F.3d 1530, 1546 (7th Cir. 1996) (Rovner, J., concurring in part). And the policy in *Muller* required prior approval for the "display" of materials on "designated bulletin boards." *Id.* at 1534 n.3 (majority op.). *Contra* Answering Br. 33 (claiming no case cited by E.D. "involve[d] a public school lending its own facility walls to promoting the speech of others"). Other courts have similarly held that the First Amendment

protects student posters on school walls and bulletin boards. *E.g.*, *Bowler v. Town of Hudson*, 514 F. Supp. 2d 168, 173 (D. Mass. 2007) (applying *Tinker* to hold that the First Amendment protected student posters "placed on walls and bulletin boards throughout the high school"); *Gold v. Wilson Cnty. Sch. Bd. of Educ.*, 632 F. Supp. 2d 771, 789–90 (M.D. Tenn. 2009) (applying *Tinker* to invalidate policy restricting hanging posters in school hallway).

As Defendants concede, E.D. wanted to post "*her*"—not the school's—"viewpoint." Answering Br. 33 (emphasis added). Defendants do not—and cannot—dispute that clubs are "student-led and initiated," "not school sponsored," and "non-curriculum based." Opening Br. 25. Putting the nail in *Hazelwood*'s coffin, Defendants require all flyers to identify the "name of the club." Answering Br. 5.

*Hazelwood* thus has no application here. "*Tinker*'s demanding standard" applies, which Defendants cannot meet. Opening Br. 27–32. As Defendants admit, they required administrative "approval" for posters and "banned" "[a]ll political speech … regardless of whether it may be disruptive." Answering Br. 5; Doc. 166 at 13. Without citation to the record, Defendants try to recast their *Policy* and *Custom* as applying only to flyers scheduling meetings. Answering Br. 35. But the *Policy* required advance approval for "*[a]ny* materials posted" and specifically references "event[s]." Doc. 152-2 at 173 (emphasis added). Similarly, the

*Custom* applied to *any* student group "advertisements." *Id.* at 101; *ac-cord* Doc. 101 ¶ 10 (admitting student clubs can "post approved flyers in the school"). *Tinker* forbids Defendants' prior restraint and viewpoint discrimination. Opening Br. 27–32.

## 2. Defendants' enforcement of their *Censorship Custom* fails even under *Hazelwood.*

Because *Hazelwood* doesn't apply, Defendants' shadowboxing against forum analysis for school walls is for naught. *See N.J.*, 37 F.4th at 416 ("This is not a speech-forum case."). But Defendants' application of their *Censorship Custom* violates even *Hazelwood.* Opening Br. 32–34. Defendants don't dispute that under *Hazelwood* "[v]iewpoint discrimination remains anathema." *Id.* at 32; *see also* States Amici Br. 13 (*Hazelwood* doesn't allow viewpoint discrimination); Foundation for Moral Law Amicus Br. 5–7. And banning all "political" speech has no reasonable relation to any pedagogical interest. Opening Br. 33–34.

Defendants argue they couldn't have discriminated based on viewpoint because "no evidence" exists that Principal McCaffrey "allowed a pro-feminism club to post flyers advocating for any political viewpoint." Answering Br. 38. That argument (1) has no bearing on this *Monell* claim and (2) contradicts Defendants' admission that they censored "the words 'Defund Planned Parenthood,'" which "reflect a specific stance on a political controversy." Answering Br. 38. *Monell* liability doesn't re-

quire past evidence of unconstitutional actions; it just looks to an unconstitutional action that "executes a policy." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). And Defendants' squelching of E.D.'s "specific stance on a political controversy" shows how Principal McCaffrey executed Noblesville Schools' discretionary *Censorship Custom* to discriminate against E.D.'s political views.

Defendants' arguments that unbridled discretion doesn't apply here also fall flat. They admit both that unbridled discretion is part of the "viewpoint discrimination analysis" and that "unbridled discretion is a concept typically applied in the context of prior restraints on speech." Answering Br. 40; Doc. 158 at 49. Their *Prior Restraint Policy* and *Censorship Custom* impose a prior restraint, "long a constitutionally prohibited power." *Fujishima v. Bd. of Educ.*, 460 F.2d 1355, 1358–59 (7th Cir. 1972). Defendants don't even cite *Fujishima*, in which this Court invalidated a high school's prior approval policy just like Defendants'. *Id.* at 1356–57.

Defendants try to justify their prior restraint under *Muller*, but that doesn't work for two reasons. First, *N.J.* overruled that case and not "*on other grounds*," as Defendants suggest. *Contra* Answering Br. 37. *Muller* relied on *Hazelwood* for its prior restraint rule, 98 F.3d at 1540, and the *N.J.* Court held that "*Muller* mistakenly applied" *Hazelwood*, 37 F.4th at 425. Second, *Muller* did not overrule *Fujishima*, a case that Court never cited.

The protection against unbridled discretion matters even more in a public school. *Contra* Answering Br. 39. Our "public schools are the nurseries of democracy." *Mahanoy Area Sch. Dist. v. B.L. ex rel. Levy*, 594 U.S. 180, 190 (2021). They must preserve the "marketplace of ideas" for our "representative democracy" to work. *Id.* By granting unbridled discretion, Defendants made speech in the marketplace of ideas "contingent upon the uncontrolled will of an official." *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151 (1969). While Defendants may not want "to craft detailed policies limiting administrators' discretion," Answering Br. 39, the First Amendment and this Court require them to do so. *Fujishima*, 460 F.2d at 1359 (time, place, and manner regulations must be "reasonable" and "specific").

Defendants next resort to ipse dixit, contending that "administrators had very little discretion in what they could permit on a student flyer." Answering Br. 39. But they do not challenge the extensive authorities holding that "political" and "appropriate" have no definite meaning and license content and viewpoint discrimination. Opening Br. 31–32. They instead fault E.D. for saying that Assistant Principal Mobley testified that "political" implemented a "really broad and vague" standard, while quoting the record evidence showing Ms. Mobley said just that. Answering Br. 17–18. E.D. agrees with Ms. Mobley *and* Principal McCaffrey: Noblesville Schools' discretionary *Censorship Custom*

imposes a "really broad and vague" standard "very much in turbulent flux." Opening Br. 31.

Defendants had no legitimate pedagogical purpose to ban political speech on student-initiated posters. *Contra* Answering Br. 37. Defendants fret about "becoming a facilitator of warring political messages that *could* disrupt the learning environment." *Id.* (emphasis added). But they do not make any showing of a "reasonabl[e] forecast" of material and substantial disruption to the school from political messaging. *See N.J.*, 37 F.4th at 416. Indeed, Defendants created the student-group forum to bring together "students of similar interests," including political interests. Answering Br. 3. No evidence suggests Noblesville High has devolved into chaos by allowing Young Democrats *and* Young Republicans to meet and speak. As the marketplace of ideas, schools should encourage—not censor—political speech.

### B. Defendants' revocation fails limited public forum scrutiny and violates associational rights (Counts I and II).

Defendants make no merits argument defending their revocation of Noblesville Students for Life's status in their limited public forum. Instead, Defendants generally challenge causation, but evidence showing causation abounds. *Infra* Section I.C.1. Defendants therefore have waived any argument that strict scrutiny doesn't apply to their revocation decision. *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 526

9

(7th Cir. 2001) (appellees waived issue by failing to respond to it). As E.D. discussed, Defendants created a limited public forum for student groups but then booted Students for Life from the forum because of its "political" flyer. Opening Br. 34–36, 45–46. That's unconstitutional.

What Defendants do say about strict scrutiny misses the mark. E.D. doesn't claim strict scrutiny applies to her "proposed flyers." *Contra* Answering Br. 40. Rather, strict scrutiny applies to Defendants' revocation of club status, for two reasons. First, revocation violates Plaintiffs' associational rights. Opening Br. 45. Second, Defendants restricted "speech that falls within the designated category for which the forum has been opened." *Id.* at 34 (quoting *Tyler v. City of Kingston*, 74 F.4th 57, 62 (2d Cir. 2023)). As Defendants recognize, they opened the student-group forum for "students who want to come together with other students of similar interests." Answering Br. 3. E.D. merely wanted to advertise to gather with students of similar interests. Yet Defendants kicked Noblesville Students for Life out of the forum for doing just that. Strict scrutiny applies, and Defendants cannot meet their burden. Opening Br. 34–35, 45–46.

### C.   Defendants retaliated against E.D.'s pro-life flyers by revoking registration (Counts V and VI).

The record shows that E.D.'s pro-life flyers motivated Principal McCaffrey's revocation, which Superintendent Niedermeyer ratified. That revocation violates decades of clearly established law.

### 1. E.D.'s "political" flyers motivated Principal McCaffrey's revocation decision.

Defendants don't dispute that prima facie causation requires "only" that the plaintiff "show" a "motivating factor" *i.e.*, "when something present makes something else bound to happen." *Surita v. Hyde*, 665 F.3d 860, 874 (7th Cir. 2011). They merely assert that E.D. cited "*no* evidence in the record creating any material fact in dispute as to Dr. McCaffrey's explanations of his reasoning" for revoking club status. Answering Br. 16. Defendants say that "*All* the evidence" shows Principal McCaffrey didn't revoke based on E.D.'s proposed posters. *Id.* at 15. But this is what the record actually reflects:

- Principal McCaffrey's revocation email says E.D.'s posters were "political" and "not appropriate for school due to the content." Opening Br. 38–39.

- Principal McCaffrey publicly wrote that he revoked status "due to multiple instances of disregard for school protocols," *including* E.D.'s request to hang her pro-life posters. *Id.* at 39.

- Principal McCaffrey revoked the group's status immediately after E.D. met with Dean Luna and discussed the posters. *Id.*

- Dean Luna informed E.D. the school was "dancing on eggshells" regarding political issues and she couldn't post her pro-life posters. *Id.*

That evidence entitles E.D. to summary judgment, but Defendants' disputes about it preclude summary judgment for them. While Defendants claim Principal McCaffrey's decision "was unrelated to the content" of E.D.'s speech, Answering Br. 42, his email says E.D. couldn't post that "*content*" at school, Doc. 158-3 (emphasis added). Principal McCaffrey testified that his claim in *The Times of Noblesville* about revocation for "multiple" policy violations included the ban on "political" posters. Doc. 152-2 at 70, 76, 78–79. 85. *Contra* Answering Br. 16. Plaintiffs didn't say Principal McCaffrey "named E.D.," *contra* Answering Br. 16, but he did refer to "a student[ ]," which is undisputedly E.D., *see id.* at 17. That article and Principal McCaffrey's email blast of the same message to the Noblesville High community started a social media debate—all about E.D.'s speech. *See* Doc. 152-2 at 384–85, 391.

The record evidence also shows that Defendants' proffered reasons for revocation are pretextual. Opening Br. 40–44. Defendants rely on (1) Mrs. Duell's involvement in two meetings with E.D. and administrators; and (2) E.D.'s meeting with Dean Luna about the flyers after discussing them with Assistant Principal Mobley. Answering Br. 15–16. First, Principal McCaffrey contemporaneously said that E.D. "did all the talking and did a good job of representing what she wanted to do" in that first meeting. Doc. 158-3. So Defendants' description of that meeting can't move the needle off of pretext. *Contra* Answering Br. 7. And

Noblesville Schools didn't have a written policy about parental involvement in clubs, despite the previous incident with alleged parental involvement in the CRU club. Opening Br. 42.

Second, the law and facts show Defendants cannot hide behind "insubordination." Insubordination cannot justify retaliation when the "protected speech" serves as the basis for the alleged "insubordination." *Gazarkiewicz v. Town of Kingsford Heights*, 359 F.3d 933, 947 (7th Cir. 2004). The record shows Principal McCaffrey didn't like E.D. asking other administrators to approve her poster. But the First Amendment protected E.D.'s posters, *supra* Section I.A, so Defendants cannot fault her for her "unobjectionable posture of standing on [her] rights." *Gazarkiewicz*, 359 F.3d at 947.

The facts also contradict Defendants' adoption of the district court's characterization that E.D. received "clear and consistent" guidance on posters. Answering Br. 43. Defendants don't dispute that E.D. didn't understand why Assistant Principal Mobley rejected her poster. *See* Opening Br. 43 (citing Doc. 158-18 at 17). In the three emails Defendants reference, neither Assistant Principal Mobley nor Mr. McCauley ever told E.D. that posters couldn't be "political." Answering Br. 10–12, 43 n.7. Assistant Principal Mobley also never said E.D. *couldn't* use a picture, just that the picture wasn't "need[ed]." Doc. 158-5 at 4. What's more, Noblesville Schools' policy allowed for pictures on flyers. Doc. 152-2 at 53. And Defendants don't dispute the overwhelming

evidence that the approval requirements for posters require significant "guessing" by students. Opening Br. 42. Defendants cannot fault E.D. for insubordination when she asked Dean Luna—who could approve posters—"why" the flyers "had been vetoed previously." Doc. 152-2 at 33–34.

## 2. Superintendent Niedermeyer acquiesced in Principal McCaffrey's retaliation.

Superintendent Niedermeyer's personal involvement in the retaliation is squarely presented to this Court. The district court "passed upon" this issue, so it is preserved for review. *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 330 (2010). The court ruled—and Defendants argue—that "the evidence shows" Superintendent Niedermeyer had no personal involvement. Doc. 189 at 26; Answering Br. 47.

The record shows the contrary. Superintendent Niedermeyer did not "merely exercise[ ] supervisory authority" over Principal McCaffrey. *Contra* Answering Br. 47. As Defendants concede, Principal "McCaffrey informed Dr. Niedermeyer—his supervisor—of [the club's] revocation after the fact." *Id.* And Defendants don't dispute that Superintendent Niedermeyer concluded Principal McCaffrey "had justification" for revocation and took no action to investigate or reverse that revocation. *See* Doc. 164-1 at 5. Superintendent Niedermeyer knew "about the conduct and … approve[d] it." *See Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). That shows personal involvement. Opening Br. 44–45.

### 3. Qualified immunity doesn't protect Defendants.

Qualified immunity doesn't protect Principal McCaffrey and Superintendent Niedermeyer. Clearly established law "does not require a prior case directly on point." *Est. of Clark v. Walker*, 865 F.3d 544, 551 (7th Cir. 2017) (cleaned up). Instead, the "contours" of the right need only "be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.*

Qualified immunity has no application to E.D.'s claims for equitable relief or her *Monell* claims. *See Burgess v. Lowery*, 201 F.3d 942, 944 (7th Cir. 2000); *Owen v. City of Independence*, 445 U.S. 622, 638 (1980); Doc. 43 at 62–65. And Defendants McCaffrey and Niedermeyer violated clearly established First Amendment law. While clearly established law shows a First Amendment violation, this Court should also reconsider how the atextual qualified immunity doctrine applies here.

### a. Defendants' retaliation violates clearly established law.

It "has long been clearly established" that "the First Amendment bars retaliation for protected speech." *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998). Similarly, this Court's precedent has long established the right of student posters to be free from prior restraints that discriminate based on "political" views and viewpoint generally. *See Fujishima*, 460 F.2d at 1356; *Hedges v. Wauconda Cmty. Unit Sch. Dist. No. 118*, 9 F.3d 1295, 1296 (7th Cir. 1993). When Principal McCaffrey, as ratified

by Superintendent Niedermeyer, retaliated against E.D. for contravening the unconstitutional *Prior Restraint Policy* and *Censorship Custom*, he violated clearly established law.

Over five decades ago, this Court held unconstitutional a high school policy that required the superintendent's advance approval "to distribute on the school premises any books, tracts, or other publications." *Fujishima*, 460 F.2d at 1356. That policy was "unconstitutional as a prior restraint in violation of the First Amendment." *Id.* at 1357. This Court cited with approval "[o]ther courts" that "held unconstitutional similar restraints on student distribution of … political literature." *Id.* (citing *Riseman v. Sch. Comm.*, 439 F.2d 148 (1st Cir. 1971)).

Three decades ago, this Court held unconstitutional a junior high school policy that prohibited "distribution" of religious, obscene, "pornographic," libelous, or "pervasively indecent and vulgar" "written material." *Hedges*, 9 F.3d at 1296. The unconstitutionality of that policy "pose[d] little difficulty." *Id.* at 1297. "It lump[ed] religious speech with obscenity and libel for outright prohibition in the junior high school." *Id.* This Court analogized the protection of religious speech to that of political speech. *Id.* at 1299 (school "can remain neutral by treating religious speech the same way it treats political speech"). But "[s]chools may not prohibit their pupils from expressing ideas." *Id.* at 1297 (citing *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969)). And "[e]ven when the government may forbid a category of speech outright, it may

not discriminate on account of the speaker's viewpoint." *Id.* at 1298; *accord Nuxoll ex rel. Nuxoll v. Indian Prairie Sch. Dist. #204*, 523 F.3d 668, 673 (7th Cir. 2008). (*Tinker* prohibits "a rule that forbade negative comments just about heterosexuality or just about homosexuality.").

*Muller* didn't change that clearly established law. With all three panel members writing separately, the *Muller* Court upheld an elementary school prior restraint. 98 F.3d at 1532. That prior restraint did not ban "political" speech, but rather used language that "mirror[ed] the *Tinker* standard." *See id.* at 1534 n.2; *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 45 (10th Cir. 2013). And this Court noted that *Tinker* had a different application "especially where elementary schools are concerned." *Muller*, 98 F.3d at 1540. *Muller* is no longer good law. *N.J.*, 37 F.4th at 425 ("[W]e think it's clear under recent Supreme Court caselaw that Judge Rovner was right and the majority's decision to apply *Kuhlmeier* was in error."). But the author of the main *Muller* opinion, Judge Manion, noted that even in its context, "*Tinker* may still stand for the similar proposition that student *political* speech cannot be suppressed solely because it is political." 98 F.3d at 1538 (op. of Manion, J.).

*Fujishima* and *Hedges* clearly establish that the application of the *Prior Restraint Policy* and *Censorship Custom* violated E.D.'s First Amendment rights. Noblesville Schools' *Prior Restraint Policy*, just like the one in *Fujishima*, required "administrative approval" for posters

with nothing to limit the administrator's discretion. Doc. 152-2 at 173. Unlike the *Muller* policy, Defendants' policy did not cabin itself to categories of speech schools may regulate. And also unlike the *Muller* policy, which applied to elementary school, Defendants imposed a prior restraint at a high school, directly on point with the policy the *Fujishima* Court invalidated. Similarly, Noblesville Schools' *Censorship Custom* banned the entire category of "political" speech and discriminated based on viewpoint with its "appropriate" criterion. Opening Br. 29–34. That "outright prohibition" and viewpoint discrimination violate *Hedges*.

That *Hedges* and *Muller* applied forum analysis makes no difference. The *Hedges* Court concluded, "The first amendment's ban on discriminating against religious speech does not depend on whether the school is a 'public forum' and, if so, what kind." 9 F.3d at 1298. So too for political speech. *Tinker* doesn't allow Noblesville Schools to "prohibit [its] pupils from expressing ideas." *Id.* at 1297. And *Hedges*'s reliance on forum analysis under *Hazelwood* shows that even under that case, Defendants violated E.D.'s clearly established rights. Noblesville Schools cannot "silence its students[']" posters "lest the audience infer that the school endorses whatever it permits." *Id.* at 1298.

Defendants incorrectly continue to dispute that E.D.'s posters motivated Principal McCaffrey's revocation, Answering Br. 47, but that argument defeats qualified immunity. "[D]isputes of material fact" about a constitutional violation make it "impossible to conclude on summary

judgment whether [Defendants were] entitled to qualified immunity." *Gupta v. Melloh*, 19 F.4th 990, 1000 (7th Cir. 2021). The record evidence shows E.D.'s protected speech motivated the retaliation. *Supra* Section I.C.1. And that evidence at least creates a dispute of material fact, so qualified immunity can't apply.

> ### b. This Court (and the Supreme Court) should reconsider how qualified immunity applies here.

Defendants violated clearly established First Amendment law, but in the alternative this Court should not apply qualified immunity jurisprudence here for at least four reasons. First, the doctrine turns on a flawed application of the derogation canon. *See* Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*, 111 CAL. L. REV. 201, 234 (2023). That canon should have no part in interpreting immunities under § 1983. *Id.* Second, the originally enacted version of § 1983 included a provision—"any such law, statute, ordinance, regulation, custom, or usage of the State to the contrary notwithstanding"—that the Reviser of the Federal Statutes omitted from the first compilation of federal law in 1874. *Id.* at 234–41. This Court and the Supreme Court have not addressed the significance of that clause in their qualified immunity decisions. The clause, properly read, means Congress created liability for state actors who violated federal law, "notwithstanding" any state "law," "custom, or usage"—*i.e.*, immunity. *Id.* at 235.

Third, the qualified immunity doctrine departs from the common law immunity that existed in 1871. *See Ziglar v. Abbasi*, 582 U.S. 120, 157–60 (2017) (Thomas, J., concurring in part and concurring in the judgment). Finally, school district officials typically confront situations that give them time to both investigate the facts and determine the constitutionality of any proposed action. This case proves the point. Defendants had no urgent need to revoke club recognition. *See Intervarsity Christian Fellowship/USA v. Univ. of Iowa*, 5 F.4th 855, 867 (8th Cir. 2021). There is no reason why those officials "who have time to make calculated choices about" student clubs "receive the same protection as a police officer who makes a split-second decision to use force in a dangerous setting." *Hoggard v. Rhodes*, 141 S. Ct. 2421, 2422 (2021) (Thomas, J., respecting denial of cert.); *accord* Upper Midwest Law Ctr. Amicus Br. 9–10.

## II. Defendants violated clearly established Equal Access Act rights (Count VII).

Defendants' revocation and censorship also violate the plain text of the Equal Access Act. As to the revocation, Defendants again incorrectly assert that "no evidence" exists Principal McCaffrey "revoked" status based "on the content of the proposed flyers." Answering Br. 49. As discussed above, such evidence proliferates. *Supra* Section I.C.1.

Regarding censorship, Defendants admitted that they "banned" "[a]ll political speech." Doc. 166 at 13. That concedes an Equal Access

Act violation. Defendants rightly do not dispute that student group posters fall under the Act's expansive definition of "meetings." *See* Opening Br. 46–47. So by censoring E.D.'s posters for "political" speech, Defendants discriminated against the "political … content" of E.D.'s speech, in violation of the Act. 20 U.S.C. § 4071(a).

Defendants' discrimination against *all* political speech only multiplies the violations. *Contra* Answering Br. 48. Defendants claim because they categorically squelched political speech, they didn't deny "equal access or a fair opportunity" to E.D. *Id.* (quoting 20 U.S.C. § 4071(a)). But Defendants omit the other basis for liability: "or discriminate against … on the basis of … political … speech." 20 U.S.C. § 4071(a); *accord Prince v. Jacoby*, 303 F.3d 1074, 1082 (9th Cir. 2002) ("[M]erely meeting the criteria for 'fair opportunity' could not possibly satisfy the affirmative requirements of equal access and non-discrimination."). That's what their discretionary *Censorship Custom* does.

The Equal Access censorship claim is appropriately before this Court. Both the district court and Defendants understood that E.D. argued the censorship violated the Equal Access Act. Doc. 189 at 43 n.9; Doc. 166 at 12 (Defendants arguing incorrectly that EAA allows "a ban" on "all political messages"). And the facts alleged in the Amended Complaint put Defendants on notice of the Equal Access Act violation for censorship. *E.g.*, Doc. 43 at 5, 14, 35. Defendants' waiver argument, Answering Br. 48, "reflects a deep and too-common misunderstanding of

federal pleading requirements," *Zall v. Standard Ins. Co.*, 58 F.4th 284, 295 (7th Cir. 2023). Plaintiffs need not "plead legal theories" and when they do, they "may later" "alter[ ] or refine[ ]" them. *Id.* Defendants had more than sufficient notice of this properly raised claim.

Defendants McCaffrey, Niedermeyer, Mobley, and Luna violated clearly established Equal Access law and thus cannot receive qualified immunity. When the "text of a statute clearly establishes the contours of a right, the statute alone is sufficient to put an objectively reasonable official on notice that conduct within the plain text of the statute violates that right for purposes of qualified immunity." *Robbins v. Wilkie*, 433 F.3d 755, 771 (10th Cir. 2006), *vacated on other grounds* 497 F.3d 1122 (10th Cir. 2007). The "qualified immunity test is simply the adaptation of the fair warning standard" of criminal law to government officials facing civil liability. *United States v. Lanier*, 520 U.S. 259, 270–71 (1997). That standard requires the statute, "either standing alone or as construed" by the courts, make it reasonably clear that Defendants' conduct was unlawful. *Id.* at 267.

The Equal Access Act's text is clear: it prohibits discrimination based on "political" speech. Binding precedent shows how the Act's nondiscrimination mandate applies to "[o]fficial recognition" for student clubs and "prohibits denial of equal access" to "bulletin boards" and "the public address system" based on the "content" of a group's speech. *Bd. of Educ. v. Mergens ex rel. Mergens*, 496 U.S. 226, 247 (1990); *accord, e.g.*,

*Prince*, 303 F.3d at 1086–87 (When a school allows clubs to use "bulletin board[s] and the public address system," "it cannot then discriminate against [other] clubs that seek the same privilege."); *Pendleton Heights Gay-Straight All. v. S. Madison Cmty. Sch. Corp.*, 577 F. Supp. 3d 927, 931 (S.D. Ind. 2021) (denying equal "access to the bulletin boards" violates the Equal Access Act); *Bowler*, 514 F. Supp. 2d at 181 (Equal Access Act does not allow school to "pull[ ] down [student posters] because of the conservative message of the Club").

Defendant McCaffery revoked status based on political speech (as ratified by Superintendent Niedermeyer) and enforced the *Censorship Custom. Supra* Sections I.C.1–2. And Assistant Principal Mobley and Luna enforced the *Censorship Custom* against E.D.'s political speech. Doc. 158-3; Doc. 158-5; Doc. 152-2 at 35. They therefore do not merit qualified immunity. What's more, the atextual doctrine of qualified immunity should not apply in the school context. *Supra* Section I.C.3.b.

## III. Noblesville Schools cannot escape liability under *Monell*.

Noblesville Schools has *Monell* liability on all claims for two reasons. First, Defendants have admitted that their unconstitutional *Prior Restraint Policy* and *Censorship Custom* were official district policy. That alone is enough. Second, Indiana law and the facts establish Principal McCaffrey as a final policymaker.

## A. Noblesville Schools had a policy and custom and practice prohibiting E.D. from displaying "political" posters (Counts II and VII).

Defendants concede that their *Handbook*—which contained the *Prior Restraint Policy*—represented Noblesville Schools' policy. Answering Br. 5. And Defendants also admitted that "Noblesville Schools had a practice and custom of not permitting flyers advertising club meetings to contain political speech." Doc. 158 at 28–29. Defendants don't dispute they did have such a custom; they just defend both the *Policy* and *Custom* on their merits. *E.g.*, Answering Br. 22. Both are unconstitutional and unlawful under the Equal Access Act. *Supra* Section I.A, Part II; Opening Br. 26–32, 46–47. Both subject Noblesville Schools to *Monell* liability.

## B. Indiana law and the record establish Principal McCaffrey as a final policymaker (Counts I, II, V, and VII).

Both the law and facts show Principal McCaffrey had final policymaking authority over student clubs and posters. Defendants' contrary arguments misunderstand Indiana law. Defendants admit that Indiana law gives Principal McCaffrey the power to "write regulations that govern student conduct" independent of review by the superintendent or board. Answering Br. 27–28. But Defendants still think the board's general authority to make rules for the district "trump[s]." *Id.* at 30. This Court has rejected that argument: a provision that "only elaborates a school board's authority to adopt rules; … does not answer the question

of whether the state or a given school board has delegated authority" in a particular area. *Cornfield by Lewis v. Consolidated High Sch. Dist. No. 230*, 991 F.2d 1316, 1325 (7th Cir. 1993). *Contra* Answering Br. 31.

Defendants also admit that Indiana law defines Principal McCaffery as "the chief administrative officer of" Noblesville High. Answering Br. 27 (quoting Ind. Code § 20-18-2-14). Their argument that the statute doesn't explicitly give him "final decision-making authority for a school *district*" is irrelevant. *Contra id.* The official need not make policy "on all matters for the municipality"; he need only make policy "in a particular area, or on a particular issue." Opening Br. 50 (quoting *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d. 664, 676 (7th Cir. 2009)). As chief administrative officer of the high school, Principal McCaffrey appropriately wrote regulations for student clubs and posters at that school.

The district court cases based on repealed law don't help Defendants. Opening Br. 51–52. Defendants characterize those cases as not "primar[ily]" relying on the repealed law. Answering Br. 29. Yet take it from those courts' own words: the now-repealed section "place[d] clear restrictions on [the principal's] authority, and seem[ed] clearly to make the governing body (in this case the School Board), the true policymaker." *Oliver by Hines v. McClung*, 919 F. Supp. 1206, 1215 (N.D. Ind. 1995); *accord Harless by Harless v. Darr*, 937 F. Supp. 1339, 1349 (S.D.

Ind. 1996) ("[U]nder this provision, … no rule becomes 'final' until presented to the board."). The Indiana Legislature's repeal of the board-review requirement shows all the more how a principal has final policymaking authority. The Legislature explicitly removed an obstacle to the principal writing regulations for his school. The repeal is dispositive. Opening Br. 52.

Neither do Defendants' other district court and Indiana court cases help them. The more recent district court cases relied on the same outdated decisions—as the district court here did—without discussion of the repeal. *E.g.*, *Wesley v. S. Bend Cmty. Sch. Corp.*, No. 3:19-cv-32, 2019 WL 5579159, at *7 (N.D. Ind. Oct. 29, 2019) (citing *Harless*); *Herndon v. S. Bend Sch. Corp.*, No. 3:15-cv-587, 2016 WL 3654501, at *1 (N.D. Ind. July 8, 2016) (citing *Harless* and *Oliver*). The Indiana case didn't involve a *Monell* issue, but rather "discretionary function immunity under the Indiana Tort Claims Act." *M.S.D. of Martinsville v. Jackson*, 9 N.E.3d 230, 241 (Ind. Ct. App. 2014). And that court focused on the issue of "develop[ing] a safety plan for the school," not student discipline. *Id.* at 233.

Defendants' arguments on the facts fare no better. Defendants' brief shows Principal McCaffrey's final policymaking role:

- "Dr. McCaffrey undertook to create a clearer, cleaner process for students to form clubs." Answering Br. 18.

- "Dr. McCaffrey" met with E.D. "to discuss forming a new club." *Id.* at 6.

- "Dr. McCaffrey told E.D. the next steps she needed to" have the club approved. *Id.* at 8.

- "Dr. McCaffrey" accepted the club formation questionnaire. *Id.*

- "Dr. McCaffrey approved" Students for Life "as a student interest club." *Id.*

- "Dr. McCaffrey emailed" his revocation decision. *Id.* at 14.

- The revocation decision "was Dr. McCaffrey's alone." *Id.*

Defendants dispute that Principal McCaffrey sets "policy," but admit he worked on "rules, practices, and procedures." Answering Br. 18. That's a distinction without a difference. Indiana law gives Principal McCaffrey power to write "regulations," and *Monell* applies to "customs and usages," just as much as policies. *Monell*, 436 U.S. at 691.

Defendants also dispute that Principal McCaffrey "alone" had power to revoke registration. Answering Br. 18. Yet they concede that he "alone, made the decision to revoke" and the board would not "even see" policy "about clubs." *Id.* at 18–19. And Superintendent Niedermeyer had "no" involvement with clubs. Doc. 164-1 at 7. The record establishes final policymaking authority, but Defendants' disputes of those facts show why the district court erred in granting them summary judgment.

Defendants' cited case from Wisconsin does not change Indiana law or the record. *See* Answering Br. 31–32 (citing *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464 (7th Cir. 2001)). As Defendants recognize, "state and local law" determine final policymaking status. *Id.* at 27. So a decision based on Wisconsin law doesn't control the Indiana-law analysis. Further, the *Gernetzke* school board merely "delegate[d] the administration" of a school to the principal. 274 F.3d at 468–69. This Court distinguished "authorized" "actions" from "authority to make all decisions concerning school administration." *Id.* at 469. The former doesn't support final policymaking authority, but the latter does. Here, Indiana law gave Principal McCaffrey the unreviewable authority to "write regulations" for student discipline. In that domain, Principal McCaffrey's authority "is final in the special sense that there is no higher authority." *Id.*; *accord* Opening Br. 52–53.

Exempting Noblesville Schools from liability for Principal McCaffrey's actions creates "perverse incentive[s]." *Cornfield*, 991 F.2d at 1326. It would encourage "school boards to adopt a policy of not having defined or written policies, the effect of which would be to immunize the municipalities from liability for unconstitutional actions by their agents." *Id.*; *accord* Young Am.'s Found. Amici Br. 31–32. Narrowly applying *Monell* liability allows a municipality to "bury its head in the sand rather than acknowledge and attempt to remedy unconstitutional conduct by its employees." *Cornfield*, 991 F.2d at 1326. Principal

McCaffrey had charge of 3,200 students and 200 staff in a one-million square foot building. Opening Br. 14. Noblesville Schools cannot invest him with such authority, then turn a blind eye to his unlawful actions.

## CONCLUSION

E.D. and Noblesville Students for Life wanted to bring their life-affirming message to Noblesville High. And the school created a forum for groups to allow students to "talk about their common interests." Doc. 152-2 at 83. Yet when E.D. proposed her pro-life message, administrators shut her down, then revoked her club's recognition based on that message. Not only did administrators act inconsistently with their own stated desire to promote student speech, they violated clearly established First Amendment and Equal Access Act law.

This Court should reverse and remand with instructions to enter summary judgment for Plaintiffs on Counts I, II, V, VI, and VII, set trial for damages, and award other appropriate relief. At a minimum, the Court should reverse and remand for trial on those Counts.

Dated: July 26, 2024

Respectfully submitted,

John J. Bursch
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(616) 450-4235
jbursch@adflegal.org

*s/Mathew W. Hoffmann*
Tyson C. Langhofer
Mathew W. Hoffmann
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, VA 20176
(571) 707-4655
tlanghofer@adflegal.org
mhoffmann@adflegal.org

Zachary S. Kester
L. Katie Buckner
Spencer E. Rehn
CHARITABLE ALLIES, INC.
3500 Depauw Blvd., Suite 3090
Indianapolis, IN 46268
(463) 229-0229
zkester@charitableallies.org
kbuckner@charitableallies.org
srehn@charitableallies.org

*Counsel for Appellants*

# CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(c) because this brief contains 6,375 words, including words contained in the images and excluding parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in Word 365 using a proportionally spaced typeface, 14-point Century Schoolbook.

Dated: July 26, 2024

*s/Mathew W. Hoffmann*
Mathew W. Hoffmann
*Counsel for Appellants*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

*s/ Mathew W. Hoffmann*
Mathew W. Hoffmann
*Counsel for Appellants*